Battle, J.
 

 We have considered the questions, presented by the counsel for the prisoner in his bill of exceptions, with all that care and anxiety for a right decision, v/hich their importance both to the prisoner and to the State imperatively demanded. We have nevertheless been unable to find in the errors assigned, any thing of which the prisoner has a right to complain. The first exception is, that the Court erred in rejecting “the evidence offered to prove the adultery of the prisoner’s wife with the deceased.” This testimony was offered to prove, not that the deceased was found by the prisoner in the act of adultery with his wife, at the time when the homicide was committed, but that “ an adulterous intercourse had been, for some time preceding the homicide, carried on between themand the counsel insisted that a knowledge, or even belief, of such adulterous intercourse, by the prisoner, would mitigate the crime from murder to manslaughter. No authority has been produced in support of this position, and so far as we can learn, all the authorities are directly against it.
 
 Hale, Foster, East
 
 and
 
 Russell,
 
 all agree in stating, that, to extenuate the offence, the bus. band must find the deceased in the very act of adultery with his wife. And so it must be upon principle. The law extends its indulgence to a transport of passion justly excited, and acting before reason has time to subdue it, but not to a settled purpose of vengeance, no matter how great the injury, or gross the
 
 *336
 
 insult, which first gave it origin. A belief — nay, a knowledge, by the prisoner, that the deceased had been carrying on an adulterous intercourse with his wife, cannot change the character of the homicide. The law on this subject is laid down with much clearness and force by
 
 Foster in Ms Crown Law, 296,
 
 and with him all the other writers substantially agree. “ A husband finding a man in the act of adultery with his wife, and in the first transport of passion killeth him; this is no more than manslaughter. But had he killed the adulterer deliberately and upon revenge,
 
 after the fact and sufficient cooling time,
 
 it had been undoubtedly murder. For let it be observed, that in all possible cases deliberate homicide, upon a principle of revenge, is murder.” As then the evidence, which was offered to show the adulterous intercourse between the prisoner’s wife and the deceased, could not, if received, have changed the nature of the offence, the Court did not err in rejecting it. But it is argued here, that the prisoner had just reasons for believing that the deceased was engaged in the act of adultery with his wife, at the very time when he broke into the house of the deceased and killed him. It may well be doubted, whether the testimony given on the trial supports this view of the case, but if it were admitted that it did, it could be of no avail to the prisoner. It is the sudden fury excited by finding a man in the very act of shame with his wife, which mitigates the offence of the husband, who kills his wrongdoer at the instant; but to the offence of one, who kills upon passion, excited by a less cause — by a mere belief of the act — the law allows of no mitigation.
 

 The second exception is “ for misdirection of the Court on the subject of drunkenness.” All the writers on the criminal law from the most ancient to the most recent, so far as we are aware, declare that voluntary drunkenness will not excuse a crime committed by a man, otherwise sane, whilst acting under its influence. Even the ca
 
 *337
 
 ses relied upon by tbe counsel for the prisoner,
 
 Rex
 
 v.
 
 Meakin,
 
 7 Car. and Payne 297, (32 Eng. C. L. Rep. 514,)
 
 Rex
 
 v. Thomas, Ibid, 817 and 750. 1
 
 Russ, on Crimes, 8,
 
 all acknowledge the general rule, but they say, that, when a legal provocation is proved,intoxication maybe taken into consideration to ascertain whether the slayer acted from malice or from sudden passion, excited by the provocation. Whether the distinction is a proper one or not, we do not pretend to say. It has been doubted in England,
 
 Rex
 
 v.
 
 Carroll,
 
 7 Car. and Payne 145 (32 Eng. C. L. Rep. 417) and it is a dangerous one and ought to be received with great caution. But whether admitted or not, it has no bearing upon the present case. There is not a particle of testimony to show, that the prisoner was acting, or can be supposed to have been acting, under a
 
 legal
 
 provocation ; and there was therefore no cause for the application of the principle, for which the counsel contends.
 

 The third exception is, “ because the Court rejected a part of the evidence, tending to show that the prisoner was labouring under monomania on the subject of his wife’s adultery with the deceased.” The testimony offered and rejected was
 
 “
 
 the declarátions of the prisoner made some time before the homicide.” We are not sure that we correctly understand this exception in the connection in which it was made. One of the grounds, of defence, taken by the prisoner, was, that he was insane at the time, when he committed the homicide, and, so far as we can discover, he was allowed to introduce all the testimony in his power to sustain it. Of that and of the charge of the Judge in relation to it no complaint is, or can be made, by the prisoner. Monomania is one among the various forms of insanity ; it is a partial insanity upon one' particular subject. As a species of insanity, it was competent for the prisoner to have proved it, and he was not restricted in his proof of it, so long as he insisted on it under the defence of insanity. It was not until after he had closed his testimony on that subjeot, and also on the
 
 *338
 
 subject of drunkenness, that he offered the testimony which was rejected. We do not well see how the one could be separated from the other. The declarations too, what were they
 
 1
 
 Were they statements-of facts by the prisoner offered as evidence of those facts
 
 1
 
 If so, they were clearly inadmissible. Were they wild, incoherent, and disjointed exclamations in relation to his wife’s adultery, evincing that they proceeded from an unsound mind
 
 1
 
 If so, the prisoner should have offered them as proof under his defence of insanity, and they would doubtless have been received. If we are
 
 to
 
 judge of their nature from the declarations, which were received, as having been made on the night of the homicide, and proved by the witness Dausey, then they ought to have been rejected as the mere idle ravings of a drunken man. Qur difficulty in understanding the exception is still further increased, by the apparently inconsistent grounds of defence assumed for the prisoner, One ground, which we have already considered, is that his wife was actually guilty of adultery with the deceased. Now if by mono* mania on that subject is meant, that the prisoner was labouring under mental delusion that his wife was guilty, when in truth she was innocent, then the fact of her innocence is directly opposed to what was asserted and offered to be proved by the prisoner’s counsel. But if the prisoner’s wife was guilty, and the insane delusion of his mind was, that he had the right to kill her paramour, then it would raise a most important and interesting question, whether insanity to that extent only would render him irresponsible for crime. It seems to be settled by the highest authority in England, that it would not,
 
 Stark, on non compos.
 
 66. Note to
 
 Regina
 
 v. Thigginson, 1 Car. and Kir. and 47 Eng. C. L. Rep. 130. But we do not wish to express an opinion upon it, until the question is brought directly before us. In this case we are compelled to decide against the prisoner, because he has not shown us, that he has been deprived of any benefit or ad*
 
 *339
 
 vantage, to which by law he was entitled. An except tion has been taken here to the manner in which the verdict was rendered against the prisoner. It is contended, that the verdict is a nullity, because it was rendered by each juror severally, instead of by the whole jointly. We think that exception is not sustainable. The jury retired together, consulted together, came into Court together, to render their verdict jointly. At the instance of the prisoner’s counsel, they were polled and each was called upon to say for himself,whether he found the prisoner guilty or not guilty. Each answered for himself, that he found him guilty. Surely such finding of each con« stituent member of the whole body, is in fact and inlaw the verdict of the jury, just as much as if they had returned their verdict in the . usual manner through their foreman, and had then been polled and had spoken each for himself. The cases cited by the counsel,
 
 Blackley
 
 v.
 
 Sheldon,
 
 7 John. Rep.
 
 82,
 
 and
 
 Watts
 
 v.
 
 Brains,
 
 Cro. Eliz. 778, only show that after the verdict is received, but before it is recorded, the jury may, if the Court please, be examined by the
 
 poll,
 
 and then either of the jurors may disagree to the verdict. But here neither of them did disagree, and when the verdict was received and recorded, it became the joint verdict of the whole jury. Indeed, the verdict might have been, and should have been, entered in the usual form, without stating upon the record that the jury had been polled. A motion was made in the Court below, and has been renewed here, to arrest the judgment for a defect alleged to be apparent on the face of the bill of indictment. The defect has not been pointed out to us, and the closest scrutiny has not enabled us to detect it ourselves.
 

 We must therefore direct it to be certified to the Superior Court of Law for Craven County,, that there is no error in the record.
 

 Per Curiam. Ordered to be certified accordingly.