STATE v. WILL BANKS.

(Filed April 30, 1907).

*Indictment—Murder—Degrees of Murder—Statute—*
*Malice—Premeditation.*

1. Evidence is sufficient for a conviction of murder in the first degree under the statute as wilful, deliberate and premeditated, which tends to show: That defendant had threatened to kill deceased in upholding his son in not paying him some money; thereafter they disputed about the amount owed, and defendant threatened the deceased with a pistol; deceased was with his son and the defendant followed the son, struck at him; deceased caught him around the neck and the defendant fired upon him several times; then defendant cursed and said he would kill him, and fired again; deceased offered no resistance, and had a gun under his left arm; deceased was fired upon twice, and between the first and second firing walked away from the defendant some twenty steps, and was followed and again fired upon.

2. Revisal, sec. 3631, does not give a new definition of murder, but classifies its different kinds as they existed at common law, theretofore included in one and the same degree; to constitute malice required by the statute to make out a case of murder in the first degree, it is unnecessary to show personal ill-will or grudge between the parties, and it is sufficiently shown when there has been a wrongful and intentional killing of another without lawful excuse or mitigating circumstances.

3. No particular time is necessary to constitute premeditation and deliberation for the conviction of murder in the first degree under the statute, and if the purpose to kill has been deliberately formed, the interval which elapses before its execution is immaterial.

INDICTMENT for the murder of one Frank McMillan, tried before his Honor, *Ward, J.,* and a jury, at May Term, 1906, Superior Court of ASHE County.

There was verdict of guilty of murder in the first degree, and from sentence thereon defendant apealed to the Supreme Court.

*Assistant Attorney-General* for the State.
*R. A. Doughton* for the defendant.

HOKE, J.   We have given the record and the exceptions noted our most careful consideration, and we find no error which entitles the prisoner to a new trial.

The objections urged upon our attention by counsel are that the Judge declined to charge as requested:

First.  That there was no evidence of a deliberate and premeditated murder, and, therefore, a verdict of murder in the first degree should not be rendered.

Second.  That to constitute murder in the first degree, there must exist, on the part of the slayer toward the deceased, expressed malice; and that in order to convict defendant of murder in the first degree in this case, the jury must be satisfied beyond a reasonable doubt that he slew deceased with particular or express malice, and that he did so with premeditation and deliberation.

Third.  That in the charge, as given, the Court did not properly instruct the jury as to what constitutes deliberation and premeditation, in that he did not tell them that if the purpose to kill was formed simultaneously with the act of killing, the homicide would not be murder in the first degree.

We are of opinion that none of these objections can be sustained.

There was evidence tending to show that the son of deceased owed the prisoner a small sum of money, and there was a dispute between them as to the amount; that a few days before the homicide, the prisoner was heard to say that the deceased, Frank, upheld his son, Onney, in not paying him the money, and that he was going to have the money or shoot the deceased.   On the occasion of the homicide there is no substantial difference in the account given by the wit-

nesses.   Three eye-witnesses to the occurrence testified, in substance, as follows:

Jesse Reeves: "Banks left church first.   McMillan and I went on home together.   We overtook Banks and Onney Mc-Millan and Robert McMillan.   Then we all went on together. Banks said that Onney owed him $1.50, and Onney disputed the amount; and Onney put his hand in his pocket, and Banks said: 'Hold on! durn you, don't bring out anything,' and pulled his pistol out.   McMillan and the boy were going on.   Banks had his pistol out, and told the boy not to dispute his word.   He leaned up against the deceased and said: 'Do you see this?'   Banks then went on and overtook Onney.   It was twenty steps to the forks of the road.   Banks ran up and told Onney he was going to have his money or beat hell out of him, and struck at him, and deceased then threw his arm around Banks' neck, and Banks fired, and deceased went up against a fence, and Banks kept walking up, snapping, and changed the barrels with his right hand, and I saw him hit deceased with the pistol.   Deceased fell.   Banks, after the first two shots, and while deceased was going away, fired at him three or four times.   Banks snapped three or four times right over the deceased after the firing, and then changed the butt of the pistol and hit deceased in the face.   Deceased walked ten steps between the time of the first and second fire."

Nettie Parsons: "Banks ran around deceased and shot him in the back.   When the last shot was fired deceased had his back turned to Banks, and Banks followed him up and fired at him as deceased was going from him.   Deceased had his back to Banks all the time he kept shooting."

Robert McMillan: "After we left the church Banks said to Onney, 'I want to see you,' and Onney stopped.   Banks had a Barlow knife, and shook it at Onney and said if Onney did not pay him he would whip him.   The deceased came up

and said he meant for the boy to pay the debt. Then they got to disputing about how much was owing Banks. Banks got his pistol out and showed it to the deceased and asked him if he saw it, and deceased said he saw it; and Onney went on in front and Banks followed him, and told Onney he was going to have his money if he had to knock hell out of him. Banks struck at Onney, and deceased caught Banks around the neck and turned, and Banks shot six times. He shot all the shots and got back and said, 'Damn, he would kill him,' and fired again. Deceased was doing nothing, except asked us not to let him kill him. Deceased had a gun under his left arm, but did not change the position of the gun."

On cross-examination, this witness further stated:

"Just before the two last shots were fired, Banks stepped back two or three feet and shot him in the back, and said he was going to kill him."

The deceased was struck four or five times, two of the shots having been fired in his back, one of these coming out at the nipple. He died in a few minutes, and not many steps from the place of the first assault.

While there was no expert testimony as to which of the wounds caused the death, at the time it occurred, there was evidence to the effect that the shots from the front entered the bowels—a kind of wound which, as a rule, does not cause a quick death. And there is every probability that the shots which caused the death at the time it occurred were those which entered the back—most likely the one going through the body and coming out at the nipple.

Without further comment, we think the mere statement of this testimony affords ample evidence that the killing was wilful, deliberate and premeditated, and the prayer of the prisoner addressed to the question was properly refused.

And we are of opinion, also, that the second prayer for

instructions on the part of the prisoner was properly declined: "That to convict of murder in the first degree there should be proof beyond a reasonable doubt that there existed particular or express malice on the part of the prisoner toward the deceased."

As we interpret this prayer, it means, and was intended to mean, that to constitute malice, required by the statute to make out a case of murder in the first degree, the unlawful killing must be from personal ill-will or grudge between the parties. And this position, we think, is clearly erroneous. There has been no change wrought in this respect by the statute dividing the crime of murder into two degrees, Revisal, sec. 3631, as to the element of malice which must exist to make out the crime.

Both before and since the statute, murder is the unlawful killing of another with malice aforethought. See Clark's Crim. Law, p. 187. This malice may arise from personal ill-will or grudge, but it may also be said to exist whenever there has been a wrongful and intentional killing of another without lawful excuse or mitigating circumstances. The statute does not undertake to give any new definition of murder, but classifies the different kinds of murder as they existed at common law, and which were, before the statute, all included in one and the same degree.

Thus, all murder done by means of poison, lying in wait, etc., or by any other kind of wilful, deliberate or premeditated killing, or murder done in the effort to perpetrate a felony, shall be murder in the first degree, and punished with death. All other kinds of murder shall be deemed murder in the second degree, and punished by imprisonment in the State's Prison.

But the constituent definition of murder remains as it was, and in neither degree is it necessarily required that the unlawful killing should be from personal ill-will or grudge.

*State v. Wilcox,* 118 N. C., 1131; *State v. Finley,* 118 N. C., 1161.

Nor can the exception made to the charge as given be sustained:

"That the Court failed to tell the jury that if the purpose to kill was formed simultaneously with the killing, the homicide would not be murder in the first degree."

The position is sound, and the case cited, *State v. Foster,* 130 N. C., 666, and other decisions, are apt to support it.

But, assuming that the exception is open to defendant without a prayer for instructions to that effect, we think the defendant has had the benefit of the principle contended for, in the full and comprehensive charge of the Court. After explaining the nature of the crime, and reading the statute dividing the crime of murder into two degrees, the Judge, among other things, speaking of this feature of the offense, said:

"In order to constitute murder in the first degree, the killing must not only be done with malice aforethought, expressed or implied, but it must be done with wilful premeditation and deliberation, and all this must be shown beyond a reasonable doubt.

"Without wilful premeditation and deliberation being thus shown, it cannot be murder in the first degree.

"The word 'wilful,' when used in a statute creating an offense, implies the doing of the act purposely and deliberately in violation of law. The meaning of the word 'premeditation' is a prior determination to do the act in question. It is not essential that this intention should exist for any considerable period of time before it is carried out. If the determination is formed deliberately and upon due reflection, it makes no difference how soon afterwards the fatal resolve is carried out. An act is done deliberately when done in cold blood and after a fixed design to do the act.

143—42

"No particular time is necessary to constitute premeditation and deliberation, and if the purpose to kill has been deliberately formed, the interval which elapses before its execution is immaterial."

And further:

"If you find from the evidence, beyond a reasonable doubt, that the prisoner, Will Banks, after wilful premeditation and deliberation and with malice aforethought, fired a pistol at Frank McMillan, and killed him, then it would be your duty to return a verdict of guilty of murder in the first degree.

"If you find from the evidence, beyond a reasonable doubt, that the prisoner, Will Banks, with malice aforethought, intentionally fired a pistol at the deceased, Frank McMillan, and killed him; and you fail to find beyond a reasonable doubt that the killing was done with premeditation and deliberation, then it is your duty to return a verdict of guilty of murder in the second degree."

In this charge, as to murder in the first degree, the Court excludes all idea of a killing simultaneous with the conception of the homicidal purpose, and directs the jury, in effect, that before they can convict of the higher crime, the killing must be from a fixed determination previously formed after weighing the matter.

The charge, we think, gives the prisoner the full benefit of the principle contended for by him, and is fully sustained by authority. *State v. Dowden,* 118 N. C., 1145-1153; *State v. Thomas,* 118 N. C., 1113-1121; *State v. Spivey,* 132 N. C., 989; *State v. Exum,* 138 N. C., 618.

There is no error, and the judgment below is affirmed.

Affirmed.