## STATE v. KOHLER HOLDSCLAW.

### (Filed 15 December, 1920.)

**1. Homicide—Murder—Motive—Evidence.**

Evidence that the deceased had been living in an illicit manner for years with a woman with whom the defendant was infatuated, and to his knowledge, is sufficient to show the defendant's motive in taking his life, upon his trial for murder.

**2. Homicide—Murder—Evidence—Res Gestae—Res Inter Alios Acta.**

Upon evidence tending to show that the defendant premeditatively and deliberately shot and killed the deceased for illicitly living with the woman with whom he was infatuated, testimony that others had remonstrated with the deceased for so doing, and the conduct of the woman over the body of the deceased immediately after the killing, etc., is not a part of the *res gestae,* but *res inter alios acta.*

**3. Homicide—Murder—Premeditation.**

The length of time between the premeditation and killing is immaterial in order to convict the defendant of murder in the first degree, and if he had preconceived the purpose to kill in all events, for however short a time, it is sufficient.

INDICTMENT for murder, tried before *McElroy, J.,* at July Term, 1920, of CATAWBA. The defendant was convicted of murder in the first degree of John W. Gabriel on 29 December, 1919. From the sentence of death, defendant appeals.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*A. A. Whitener and M. H. Yount for defendant.*

BROWN, J. The evidence tended to prove that the defendant and the deceased were at Connor's store at Terrell, in the county of Catawba, on 29 December, 1919; that no words passed between the defendant and the deceased, according to the State's witness, preceding the shooting. The deceased had a negro boy named Bud Farrar to help crank his automobile. The deceased was leaning over the hood of the machine pulling the flood wire when the defendant advanced on him without warning and fired his first shot. The shot entered the right side of deceased's head, and he fell backwards prone upon the ground. The defendant advanced toward him and fired the second shot directly into his forehead as he lay upon the ground. Either shot would have been fatal. The defendant then mounted his horse, which he had ready saddled and bridled, waved his pistol towards Marjorie Lockman, who

was at Connor's house, about 125 yards off, and exclaiming, "Fare you well, Marjorie!" rode rapidly off, and was afterwards found in the State of Alabama.

There was ample evidence of a motive to take the life of the deceased. The defendant was infatuated with Marjorie Lockman, whom, the evidence showed, had been living with the deceased in an illicit manner for some years.

The defendant offered to prove, first by the witness Bruce Gabriel, then by the witness Blain Sigmon, and also by the witness Henry Gabriel, that each had at different times a conversation with the deceased, with reference to his illicit relationship with Marjorie Lockman, and in which each attempted to dissuade him from continuing it further, and to each the defendant replied signifying his intention of continuing it, and of his determination not to be interfered with by the respective witnesses or any other.

Defendant offered to prove by the witness, Sheriff Isenhour, that on the day of the homicide he had a conversation with Marjorie Lockman wherein she told him of her illicit relations with the deceased since she was thirteen years of age, and that she stated to the witness that defendant had been begging her to marry him, and that she could not on account of deceased.

Defendant offered to prove by the witness Henry Gabriel that he knew that there was a general reputation in the community that there was an illicit relationship existing between the deceased and Marjorie Lockman.

Defendant offered to prove by the witness Gabriel that Marjorie Lockman, when she came up to the dead body, fell down over it and cried out, "Some one has killed my darling."

None of this testimony was competent. It is all irrelevant to the issue to be tried by the jury, and could furnish no justification or excuse for the killing of the deceased, if it had been admitted. None of the proposed facts was a part of the *res gestae,* but all were *res inter alios acta.* *S. v. John,* 30 N. C., 330; *S. v. Samuel,* 48 N. C., 74; *S. v. Harman,* 78 N. C., 515.

There are several exceptions to the judge's charge which it is unnecessary for us to consider *seriatim.* There was abundant evidence of preparation and premeditation which his Honor correctly recited to the jury. In charging the jury as to what constitutes premeditation, we think the judge carefully followed the well settled decisions of this Court. No particular time is necessary to constitute premeditation and deliberation for conviction of murder in the first degree under the statute. If the purpose to kill at all events has been deliberately formed, the interval which elapses before its execution is immaterial. *S. v. Banks,* 143 N. C., 652.

The judge very fully stated the contentions of the defendant, together with the evidence upon which he relied, in a very clear manner. The defendant relied upon a plea of self-defense. The instructions upon that phase of the case followed the decisions of this Court. *S. v. Clark,* 134 N. C., 698; *S. v. Bailey,* 179 N. C., 724.

Upon a careful review of the whole record, we are unable to find any reversible error.

No error.