STATE OF NORTH CAROLINA v. BONNIE SMITH LEWIS

No. 755SC448

(Filed 19 November 1975)

**1. Criminal Law § 9; Homicide § 21— aiding and abetting murder — absence of criminal intent**

    The State's evidence was insufficient to support a jury finding that defendant shared her boyfriend's criminal intent to kill her husband, and defendant therefore could not be convicted of second degree murder of her husband as an aider and abettor, where the evidence tended to show that defendant and her husband engaged in an altercation near defendant's automobile, defendant shot her husband in the foot, while defendant's husband and defendant were struggling for the gun, defendant's boyfriend got out of defendant's car and shot defendant's husband three times, thereby causing his death, and after the shooting defendant and her boyfriend spent the night together in a motel.

**2. Assault and Battery § 14— felonious assault — sufficiency of evidence**

    The State's evidence was sufficient for the jury in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury where it tended to show that defendant's husband stopped his pickup truck immediately behind defendant's car, defendant got out of her car carrying a gun and went to the window of the truck, an argument ensued, defendant's husband got out of the truck and advanced toward defendant, defendant stated, "I will kill you," and shot her husband in the foot, and the injury was sufficient to cause permanent impairment.

**3. Assault and Battery § 15— refusal to charge on self-defense**

    The trial court did not err in the refusal to charge on self-defense in a felonious assault case where the evidence tended to show that defendant, who was armed with a gun, engaged in an argument with her unarmed husband, and as the husband advanced toward her, defendant stated, "I will kill you," and shot her husband in the foot, since there was no evidence that defendant was in such danger, either real or apparent, as would justify acting in self-defense.

**4. Assault and Battery § 13— prior threats — victim's reputation as fighting man**

    The trial court in a felonious assault case did not err in the exclusion of testimony of prior threats made by the victim against defendant or of the victim's reputation as a violent and dangerous fighting man where there was no other evidence of self-defense.

**5. Criminal Law § 88— exclusion of questions calling for conclusions**

    The trial court did not err in sustaining the district attorney's objections to questions asked a State's witness on cross-examination which called for conclusions by the witness.

6. Criminal Law § 99— rulings, questions and comments by court — no expression of opinion

The trial court did not sustain its own objections or cross-examine defendant and make comments about her credibility since the rulings, questions and comments of the court were for the purpose of clarifying defendant's testimony or were a proper exercise of the court's discretion in controlling the examination of the witness.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 13 January 1975 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 18 September 1975.

The defendant, Bonnie Smith Lewis, was charged in one bill of indictment, proper in form, with the willful and felonious assault of William Randolph Lewis with a deadly weapon with intent to kill inflicting serious injury. She was charged in another bill of indictment, proper in form, with the murder of William Randolph Lewis. In open court the District Attorney announced that the defendant would be tried for second degree murder and assault with a deadly weapon with intent to kill resulting in serious injury. The defendant pleaded not guilty to both charges.

The State offered the testimony of three eyewitnesses which together showed the following: On 3 November 1973, at about 5:00 p.m., a car driven by the defendant was moving along the Carolina Beach Road in Wilmington, North Carolina. It stopped at an intersection called Monkey Junction and a green pickup truck driven by William Lewis, defendant's husband, stopped directly behind defendant's car. The defendant got out of her car, carrying a gun and went to the window of the truck. An argument ensued, none of the witnesses hearing exactly what was said, but the defendant was waving the gun around the window of the truck. Mr. Lewis opened the truck door and the defendant began backing away toward her car. Mr. Lewis got out of the truck and walked toward the defendant. As he advanced toward her, she said, "I will kill you." The gun was aimed at a downward angle; and as he came toward her, she fired, shooting Mr. Lewis in the foot.

After the defendant shot, her husband grabbed for the gun, holding on to her hand and her elbow. A few seconds after this, Tom Richardson got out of the passenger side of defendant's automobile, walked to the back of the car, and immediately fired four shots at defendant's husband. Mr. Lewis turned, and bracing himself on the hood of the truck, he walked back and

got into the truck. Richardson walked back to the door of the truck followed by the defendant. He shouted through the window, "I will shoot through the window and I will kill you." Mr. Lewis apparently did not respond. Richardson and the defendant got back into defendant's car and drove off.

Charles Smith testified that he and another member of the Rescue Squad arrived on the scene soon after the shooting. They saw that Mr. Lewis had been shot, but he was still breathing. They gave him oxygen, but he died while they were transporting him to the hospital. Detectives from the New Hanover County Sheriff's Department arrived at approximately 6:15 p.m. They searched the area and the truck but found no gun.

Testimony by Dr. Henry Singleton showed that three of the four bullets fired by Richardson struck Mr. Lewis. He died from "massive injury and tissue injury and bleeding" caused by one of the bullets which went through the chest and into the heart.

The State's evidence also showed that the defendant and Tom Richardson had been going together for a number of years, and that he was her boyfriend and lover. After the shooting, they spent the night together in a motel. The next day, after the defendant read in the paper that her husband was dead, she went to the Sheriff's Department.

After the shooting, the defendant and Richardson took two of the empty casings from Richardson's gun and placed them in defendant's gun. When the defendant turned herself in, she also turned in the gun with the empty casings still in it. Richardson had disposed of his gun by throwing it in the river.

The defendant's testimony tended to show that: On 3 November 1973, the defendant was driving her car, and Tom Richardson, her boyfriend, was riding with her. They both carried guns. They were headed down the Carolina Beach Road when she noticed her husband's truck moving up behind her. She speeded, weaving in and out of traffic trying to lose him; but he followed her, almost on her bumper. Finally, after four or five miles, she pulled into the turn lane at Monkey Junction and stopped. The defendant got out of the car and walked back to the window of the truck which had stopped behind her. She took her gun, because she thought her husband had a gun that had been stolen from her two days previously. She argued with her husband who got out of the truck. As he advanced toward

State v. Lewis

her, the defendant told him, "William, for the love of God go on," and when he continued toward her, she shot toward the ground, trying to scare him. He grabbed her, pinning her against the front fender of the truck. As they struggled, she heard two shots. Mr. Lewis stood up straight, and she heard two more shots. Mr. Lewis said, "All right, Tom, I am going to leave her alone. I am going." While she stood there, her husband walked back and got into the truck. Richardson walked up to the window and said something. He then told the defendant to get into the car and they left.

The defendant did not believe her husband had been hit, but she was worried about him. About 45 minutes later, she and Richardson drove back through Monkey Junction. She saw what she thought was her husband sitting behind the wheel of the truck talking to two deputy sheriffs. Believing he would have her arrested, she became scared to go home. Instead she and Richardson spent the night at a motel. She turned herself in to the sheriff the next day after learning her husband was dead. While in custody, she had inquired whether the police could tell how many times her gun went off.

The defendant also testified that she had separated from her husband in September 1973 because he was cruel to her, fought with her, and threatened to kill her. Just prior to leaving him, Mr. Lewis had held a shotgun on her, in the presence of her children, threatening to kill her. Five years earlier, while they had been separated, Mr. Lewis had come to High Point, broken into her home, assaulted her, and taken the children. On another occasion, while they were barning tobacco, her husband had attacked her in the presence of the other workers, cursing her, and ripping half her clothes off. On still another occasion, when she was pregnant, he had taken her out of bed and thrown her out the door into 23-degree weather. She testified that he was a big man and that she was afraid of him.

After leaving her husband, the defendant lived with a co-worker from Parker's Food Store. Defendant's husband would come to Parker's and hang around trying to get her fired. When she left at night, he would follow her car in his truck, trying to find out where she lived. He would drive the truck up close to her bumper to harass her as she drove. On one occasion, she had run a red light and he had run through also, chasing her along the street. She had complained to the police about his harassment, but they had not stopped it.

The jury returned verdicts of guilty of second degree murder and assault with a deadly weapon inflicting serious injury. From judgment entered that the defendant be imprisoned for ten (10) years for murder and five (5) years for assault, the two terms to run concurrently, the defendant appealed.

*Attorney General Edmisten, by Associate Attorney Archie W. Anders for the State.*

*Jeffrey T. Myles for defendant appellant.*

HEDRICK, Judge:

The defendant assigns as error the denial of her timely motion for judgment as of nonsuit on the charge of second degree murder. The State does not contend that defendant's gun inflicted the injuries resulting in her husband's death; rather, it contends that she aided and abetted Tom Richardson in the murder of her husband. Before the jury could find the defendant guilty of second degree murder, the State first had the burden of offering evidence from which the jury in this case could find that Tom Richardson had committed the crime of second degree murder.

The evidence introduced by the State was clearly sufficient to support a finding by the jury that Tom Richardson shot and killed defendant's husband with malice, and without just cause, excuse, or justification. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969); *State v. Banks,* 143 N.C. 652, 57 S.E. 174 (1907); *State v. Currie,* 7 N.C. App. 439, 173 S.E. 2d 49 (1970).

Although the evidence is sufficient for the jury to find that Richardson committed the offense of second degree murder as a principal in the first degree, this conclusion does not put an end to our inquiry. Our concern is whether the evidence is sufficient to raise an inference that the defendant aided and abetted Richardson and whether the evidence will support the verdict that the defendant is therefore guilty as a principal in the second degree.

"The mere presence of a person at the scene of a crime at the time of its commission does not make him a principal in the second degree; and this is so even though he makes no effort to prevent the crime, or even though he may silently approve of the crime, or even though he may se-

State v. Lewis

cretly intend to assist the perpetrator in the commission of the crime in case his aid becomes necessary to its consummation.

To constitute one a principal in the second degree, he must not only be actually or constructively present when the crime is committed, but he must aid or abet the actual perpetrator in its commission. A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent of the actual perpetrator, and renders assistance or encouragement to him in the perpetration of the crime. While mere presence cannot constitute aiding and abetting in legal contemplation, a bystander does become a principal in the second degree by his presence at the time and place of a crime where he is present to the knowledge of the actual perpetrator for the purpose of assisting, if necessary, in the commission of the crime, and his presence and purpose do, in fact, encourage the actual perpetrator to commit the crime." *State v. Birchfield*, 235 N.C. 410, 413-14, 70 S.E. 2d 5, 7-8 (1952) (citations omitted).

To sustain a conviction of the defendant as principal in the second degree, the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrator in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrator. Such communication of intent to aid, if needed, does not, however, have to be shown by express words of the defendant, but may be inferred from his actions and from his relation to the actual perpetrator. *State v. Rankin*, 284 N.C. 219, 223, 200 S.E. 2d 182, 185 (1973).

[1] Applying the foregoing well-established principles to the facts before us, we are of the opinion that the evidence is insufficient to raise an inference that defendant aided and abetted Richardson in the murder of her husband. While the evidence of the lover relationship between the defendant and Richardson and of defendant's conduct both before and after the shooting of her husband are strong circumstances from which the jury might infer that the defendant intended to kill her husband, or that she silently approved of Richardson's committing the act, or that she might have intended secretly even to aid him if such became necessary, there is nothing in the

evidence from which the jury might infer that the defendant *shared* Richardson's criminal intent to kill her husband. This is true since there is no evidence in the record from which the jury could find that the defendant knew that Richardson would come suddenly upon the immediate scene of her altercation with her husband and fire four shots at point blank range at her husband, or that the defendant by word or deed communicated any intention she might have had to Richardson which he might have considered as encouragement to him to commit the crime.

Under the circumstances here presented, the defendant had no control over her presence at the scene of the killing of her husband within the contemplation of the rule of law applied in *State v. Birchfield* and *State v. Rankin, supra.* No construction of the evidence here will permit an inference that the defendant had any knowledge that Richardson might get out of her automobile and shoot and kill her husband. In the absence of some evidence that the defendant had some knowledge, either actual or constructive, that Richardson intended to shoot her husband, the defendant could not have shared his criminal intent to commit the crime. The assignment of error is sustained.

[2]   The defendant assigns as error the denial of her motion for judgment as of nonsuit as to the charge of assault with a deadly weapon with intent to kill resulting in serious bodily injury. The uncontradicted evidence shows that the defendant carried the gun with her when she went back to the truck and later shot her husband, inflicting physical injury. There was in addition evidence that the injury could have caused permanent impairment. Clearly, the evidence was sufficient to require submission of this case to the jury and would support the conviction for assault with a deadly weapon inflicting serious injury.

[3]   Defendant assigns as error the refusal of the court to instruct the jury on the doctrine of self-defense as to the felonious assault charge. A person is justified in defending himself if he " . . . is without fault in provoking, or engaging in, or continuing a difficulty with another . . . . " *State v. Anderson,* 230 N.C. 54, 56, 51 S.E. 2d 895, 897 (1949). Where the jury finds that the defendant intended to kill and inflicted injuries, to be completely absolved, the jury must find that he acted in self-defense against "actual or apparent danger of death or great bodily harm . . . . " *State v. Anderson, supra* at 55, 51 S.E. 2d at 897. But, where the jury finds that the defendant did not intend to kill, the defendant " . . . is privileged by the law

State v. Lewis

of self-defense to use such force against the other as is actually or reasonably necessary under the circumstances to protect himself from bodily injury or offensive physical contact at the hands of the other, even though he is not thereby put in actual or apparent danger of death or great bodily harm." *State v. Anderson, supra* at 56, 51 S.E. 2d at 897. Under either finding, though, the defendant must be without fault and must have acted in response to some danger of injury, either real or apparent.

The trial court is required to charge on self-defense, even without a special request, when, but only when, there is some construction of the evidence from which could be drawn a reasonable inference that the defendant assaulted the victim in self-defense. *State v. Goodson,* 235 N.C. 177, 69 S.E. 2d 242 (1952); *State v. Moses,* 17 N.C. App. 115, 193 S.E. 2d 288 (1972). No construction of the evidence here, in our opinion, gives rise to an inference that the defendant was in such danger, either real or apparent, as would justify acting in self-defense. This assignment of error is overruled.

[4]   Defendant assigns as error the refusal of the trial judge to admit testimony of "prior threats the victim had made against the defendant," or testimony as to the "victim's reputation as a violent and dangerous fighting man." Where there is other evidence of self-defense, testimony of threats and of the victim's reputation are relevant in certain circumstances and generally admissible; but where there was no other evidence of self-defense, there was no prejudicial error in refusing to allow such testimony. Stansbury's, North Carolina Evidence 2d, Vol. 1, §§ 106, 162(a); *State v. Minton,* 228 N.C. 15, 44 S.E. 2d 346 (1947); *Nance v. Fike,* 244 N.C. 368, 93 S.E. 2d 443 (1956).

[5]   Defendant assigns as error the trial court's action in sustaining the District Attorney's objections to the following three questions asked to State's witness Terry Wayne Brewer on cross-examination:

(1)  "At any time did you see her [defendant] do anything to assist Tom Richardson in firing his four shots?"

(2)  "When she [defendant] said this statement [where she told her husband she would kill him], did you catch every word that she said?"

(3)  "O.K. Did William Lewis, was there enough room for that truck that was behind the car to have pulled out and gone straight down Highway 421?"

· The judge is in charge of the scope of the cross-examination and we are not inclined to review his decisions unless the defendant has shown an abuse of that discretion. *State v. Lindley,* 23 N.C. App. 48, 208 S.E. 2d 203 (1974), *affirmed* 286 N.C. 255, 210 S.E. 2d 207 (1974). The questions asked call for a conclusion on the part of the witness. As such they were objectionable and the judge's ruling was not an abuse of his discretion. This assignment of error is overruled. ·

[6] By assignments of error IV and V, the defendant maintains the trial judge expressed an opinion on the evidence in violation of G.S. 1-180 by "sustaining his own objections throughout the trial" and in "cross examination of the defendant by the trial judge and comments by him as to her credibility." "It is well settled in this State that the trial judge can ask questions of a witness in order to obtain a proper understanding and clarification of the witness' testimony. *State v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264; *State v. Stevens,* 244 N.C. 40, 92 S.E. 2d 409; *State v. Furley,* 245 N.C. 219, 95 S.E. 2d 448." *State v. Strickland,* 254 N.C. 658, 661, 119 S.E. 2d 781, 783 (1961). Similarly, " . . . judges do not preside over the court as moderators, but as essential and active factors or agencies in the due and orderly administration of justice." *Eekhout v. Cole,* 135 N.C. 583, 589, 47 S.E. 655, 657 (1904) ; *State v. Colson,* 274 N.C. 295, 308, 163 S.E. 2d 376, 385 (1968). The court has authority to limit examination and to exclude evidence which is wholly incompetent or inadmissible. *Greer v. Whittington,* 251 N.C. 630, 111 S.E. 2d 912 (1960).

· We have carefully examined each of the 15 exceptions upon which these assignments of error are based and find them to be without merit. The able judge did not sustain his own objections as contended by defendant, nor did he cross-examine defendant, or make comments about her credibility. The record discloses that the defendant on both direct and cross-examination repeatedly gave answers that were not responsive and testimony that was not clear. Each ruling, question, or comment challenged by these exceptions clearly was for the purpose of clarifying defendant's testimony or was a proper exercise of the judge's discretion in controlling the examination of the witness. These assignments of error are overruled.

The defendant has additional assignments of error with respect to the charge of second degree murder which we do not discuss in view of our disposition of the charge.

. . The result is: With respect to the charge of assault with a deadly weapon with intent to kill inflicting serious injury, we hold that the defendant had a fair trial free from prejudicial error.

No error.

With respect to the charge of second degree murder, the evidence was insufficient to support a verdict of guilty, and the defendant's motion for judgment as of nonsuit should have been allowed. Hence, the judgment entered on the charge of second degree murder is

Reversed.

Judges MORRIS and ARNOLD concur.