DILLON, Judge.
Reginald Underwood Fullard ("Defendant") appeals from convictions for assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI") and for possession of a firearm by a convicted felon. For the following reasons, we find no error in Defendant's trial.
I. Background
Defendant was indicted for AWDWIKISI and possession of a firearm by a convicted felon. On 7 May 2013, Defendant waived his trial counsel and decided to represent himself in the proceedings. At Defendant's trial in superior court, the State's evidence tended to show as follows: One evening, Mr. Frazier (the victim) was sitting in a driveway drinking beer with Taryll Carpenter, a few driveways down from Defendant's residence. Mr. Frazier saw Andrea Hart walking towards him up the street carrying a box of chicken. After they talked, she walked further down the street, and he observed that Defendant was standing beside his gate near the street. When Ms. Hart got to Defendant's residence, Ms. Hart yelled for Mr. Frazier to walk towards her. When Mr. Frazier got to Ms. Hart, she handed him her box of chicken and then punched Defendant. Ms. Hart then ran behind Mr. Frazier.
Defendant approached Mr. Frazier, who tried to break up the fight between Defendant and Ms. Hart. Defendant then told Mr. Frazier, "I'll kill you[,]" or "I'll shoot you," and then he pulled out a small handgun and shot Mr. Frazier in the chest. At the time of the shooting, Mr. Frazier did not have anything in his hand, other than Ms. Hart's box of chicken. Mr. Carpenter, who had come on the scene, also did not have a weapon on his person.
Following the shooting, Defendant went inside his house. The others ran away, and Mr. Frazier went to get help for his injury. Shortly thereafter, police and paramedics arrived on the scene.
Defendant was subsequently taken into custody by police. A search warrant was obtained for Defendant's residence, and detectives found a small .25 caliber handgun hidden inside a clothes dryer in Defendant's apartment.
Defendant testified in his own defense as follows: He had a rocky relationship with Ms. Hart, and also Mr. Carpenter and Mr. Frazier had taken advantage of him in the past. On the night in question when Ms. Hart approached him on the street, Defendant told her, "we need to let things go and move on." Mr. Carpenter and Mr. Frazier then started approaching Defendant, and Mr. Frazier gave Ms. Hart a cup of some liquid, which she threw in Defendant's face, and then she struck Defendant. Defendant testified that "when [Mr. Frazier] came up ... I thought they were trying to rob me." Defendant testified that "I don't know where the firearm came from, but I think we ended up wrestling. I do recall swinging my cane." He could tell by his expression that Mr. Frazier was "hot" and "desperate" at the time.
Defendant testified that the gun discharged accidently, that is, he did not intend to shoot Mr. Frazier. Defendant stated that after the shot went off he saw Mr. Carpenter drop a shotgun on the ground. After the shot and struggle with Ms. Hart, Defendant got control of the handgun, and Mr. Carpenter ran off. Defendant then went into the house with the weapon. Defendant also recalled "being in fear and being-receiving threats of my person."
The jury found Defendant guilty on both counts. The trial court sentenced Defendant on the AWDWIKISI conviction, after finding certain mitigating factors, to a term of 120 to 156 months of imprisonment. The trial court also sentenced Defendant for the possession of a firearm by a felon conviction, after finding certain mitigating factors, to a concurrent term of 17 to 30 months of imprisonment. Defendant gave notice of appeal in open court.
II. Analysis
In his only argument on appeal, Defendant contends that the trial court erred in denying his request for a self-defense instruction.
Generally, a trial court must instruct the jury on all substantial features of a case raised by the evidence, including defenses. State v. Adams,335 N.C. 401, 419, 439 S.E.2d 760, 769 (1994). The trial court is required to instruct the jury on self-defense, even without a special request, "when, but only when, there is some construction of the evidence from which could be drawn a reasonable inference that the defendant assaulted the victim in self-defense." State v. Lewis,27 N.C.App. 426, 433, 219 S.E.2d 554, 559 (1975). "A defendant is entitled to an instruction on self-defense if there is any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm." State v. Bush,307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982). "If, however, there is no evidence from which the jury reasonably could find that the defendant in fact believed that it was necessary to kill his adversary to protect himself from death or great bodily harm, the defendant is not entitled to have the jury instructed on self-defense." Id."[B]efore the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable?" Id."If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given." Id.at 160-61, 297 S.E.2d at 569. In making this determination, the evidence is viewed in the light most favorable to the defendant. State v. Hudgins,167 N.C.App. 705, 709, 606 S.E.2d 443, 446 (2005). We review de novoa trial court's decision regarding jury instructions. State v. Osorio,196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009).
Defendant argues that the trial court erred in not giving an instruction on self-defense because evidence presented at trial showed that he was in fear for his life and that he intentionally shot the victim in self-defense. Here, Defendant gave a thoroughly different account of the events that occurred on the day in question than that presented by the State. Specifically, Defendant stated that even though he was in fear of Mr. Frazier, Ms. Hart, and Mr. Carpenter, he shot Mr. Frazier accidentally.The State presented evidence that Defendant intentionally shot Mr. Frazier at close range. Defendant's argument combines the two accounts, as the jury would be allowed to do, but, even in combination, there was insufficient evidence to support an instruction on self-defense.
1. Subjective belief
As to whether Defendant in fact formed a subjective belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, Defendant consistently testified that the shooting was an accident that occurred during a struggle with Ms. Hart:
[State:] And during the course of this struggle with Andrea Hart, it's your testimony that this gun just went off?
[Defendant:] Yes. Pretty much. With no one really-I wouldn't say no one had control of the weapon. I know how-I'm very familiar with weapons. I can, you know, use a weapon. I'm the expert about that. Well, qualifications-wise.
....
Q. So you're not that good of a marksman?
A. No. I didn't-I had no intention of firing the weapon point-blank or in any form or fashion. Had I intended to kill anyone, surely they would be dead.
Also, the following exchange occurred in denying his motion for the introduction of evidence to support self-defense, between the trial court and Defendant:
The Court: All right. Mr. Fullard, your testimony was, sir, that the gun went off accidentally.
[Defendant]: To the best of my knowledge yes.
Our courts have held that when a defendant testifies that he did not have the intent to shoot the victim he is not entitled to an instruction on self-defense. In State v. Williams,the defendant also testified that he did not intentionally shoot the victim:
The defendant testified that he felt threatened because [an adversary] reached at his belt as if he were reaching for a pistol. Defendant testified that he then pointed his pistol in the air and fired three shots to scare [his adversaries] and make them back off.
342 N.C. 869, 872, 467 S.E.2d 392, 393 (1996). In affirming the denial of his request for an instruction on self-defense, our Supreme Court stated that
[t]he defendant is not entitled to an instruction on self-defense while still insisting that he did not fire the pistol at anyone, that he did not intend to shoot anyone and that he did not know anyone had been shot. Clearly, a reasonable person believing that the use of deadly force was necessary to save his or her life would have pointed the pistol at the perceived threat and fired at the perceived threat. The defendant's own testimony, therefore, disproves the first element of self-defense.
Id.at 873, 467 S.E.2d at 394. See also State v. Lyons,340 N.C. 646, 662, 459 S.E.2d 770, 779 (1995) ; State v. Hinnant,---N.C.App. ----, ----, 768 S.E.2d 317, 320 (2014) ; State v. Gaston,---N.C.App. ----, ----, 748 S.E.2d 21, 26-27 (2013).
Citing State v. Whetstone,212 N.C.App. 551, 711 S.E.2d 778 (2011), Defendant points to testimony from Mr. Frazier and Ms. Hart that Defendant stated that he was going to kill Mr. Frazier just before pulling the trigger. Defendant argues that this testimony from the State's witnesses, when combined with his own testimony that he thought Mr. Frazier and Mr. Carpenter were approaching him to rob him, establish at least an inference he was in fact subjectively in fear for his life.
In Whetstone,in awarding the defendant a new trial, we stated that "there is sufficient evidence of record to support the proposition that [the victim's] assault upon Defendant gave rise to Defendant's reasonable apprehension of death or great bodily harm" as the victim in which the defendant assaulted with a knife was a former marine trained in hand-to-hand combat, hit the defendant in the back of the head, knocked the defendant to the ground, got on top of the defendant and started chocking him, told the defendant "I'll [expletive deleted] kill you[,]" the defendant said he "was scared to death[,]" and the defendant told his parents that the victim tried to kill him. 212 N.C.App. at 560, 711 S.E.2d at 784-85. Outside of Defendant's statement to Mr. Frazier that "I'll kill you" this case is quite dissimilar as Defendant only gave vague testimony regarding his fears stating that he recalled "being in fear and being-receiving threats of my person[,]" and that he was in fear because of a possibility of a broken neck because of "cervical radiculopathy [,]" "a bullet in my heart[,]" "hernia issues[,]" "PTSD" from "several concussions in the past[,]" and "spinal issues" from his time in the Army. He never testified that he was in fact in fear for his life because of Mr. Frazier or Mr. Carpenter, and there is no evidence that either man physically touched or threatened Defendant prior to or just before the shooting. We have stated that even viewed in the light most favorable to a defendant, a defendant's testimony that he "had some vague and unspecified nervousness or fear due to the fighting that was going on around him but does not state that he specifically feared the [victim]" is insufficient for an instruction on self-defense. State v. Reid,335 N.C. 647, 671-672, 440 S.E.2d 776, 790 (1994). Even assuming arguendothat this was sufficient to show Defendant subjectively formed a fear for his life or bodily harm, that fear was not reasonable.
2. Reasonableness
The State's evidence showed that neither Mr. Frazier nor Mr. Carpenter were armed but it was Defendant that brandished the handgun and shot Mr. Frazier. See State v. Wallace,309 N.C. 141, 148, 305 S.E.2d 548, 553 (1983) (in determining that the reasonableness element was not satisfied the Court considered that "[t]he deceased was unarmed and the defendant had a gun.") "[A]lthough a party is privileged to use deadly force to defend against an attack by unarmed assailants of vastly superior size, strength or number," State v. Sanders,295 N.C. 361, 367, 245 S .E.2d 674, 679 (1978), here, when both men approached Defendant when called by Ms. Hart, neither Mr. Frazier nor Mr. Carpenter were hostile to Defendant, approached him in an aggressive manner, or tried to strike at him. In fact, witnesses consistently testified that Mr. Frazier was trying to calm the situation down when Defendant shot him. In either account, it was Ms. Hart that punched Defendant in the head, threw a liquid substance on his person, wrestled with him, and had brought the handgun to the scene. However, Defendant's testimony focused on his alleged fear of Mr. Carpenter and Mr. Frazier, the person he shot. Defendant testified that when he approached him, Mr. Frazier looked mad or "hot" and vaguely stated that both Mr. Frazier and Mr. Carpenter looked "desperate[.]" Defendant testified that he had received threats but did not state that those threats were from any specific person. Even though he believed that Mr. Frazier and Mr. Carpenter "were very capable of taking [him] down[,]" Defendant never stated that either approached him aggressively or attempted to grab him or strike him physically. Defendant also testified that it was only after the gun fired that he saw Mr. Carpenter drop a shotgun and run away, never indicating that he observed the firearm in Mr. Carpenter's hand prior to the shooting, and the police did not find any shotgun at the scene. Even when the conflicting accounts are viewed in the light most favorable to Defendant, there is no evidence that Mr. Frazier was armed when he approached Defendant, that Mr. Frazier attempted to assault Defendant, or that Mr. Frazier said anything threatening to Defendant. See State v. Wills,110 N.C.App. 206, 211, 429 S.E.2d 376, 379 (1993) (where as the victim walked towards the defendant just prior to the shooting, the victim was unarmed and did not attempt to strike the defendant, and the defendant admitted that he never seen the victim with a weapon, the Court affirmed the denial of a requested self-defense instruction because there was no evidence "from which it can be determined that it was necessary or reasonably appeared necessary for [this] defendant to kill the victim ... to protect himself from death or great bodily harm[,]" even though the defendant made "self-serving statements" that he "was scared" and "was afraid [of] the [victim]," the victim had punched the defendant two days earlier, and the victim had threatened him with assault earlier that same day).[1]
Accordingly, Defendant did not have a reasonable fear of death or bodily harm and the trial court properly denied Defendant's request for the instruction on self-defense. Therefore, we find no error in Defendant's trial.
NO ERROR.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
Opinion
Appeal by Defendant from judgments entered 1 November 2013 by Judge David L. Hall in Forsyth County Superior Court. Heard in the Court of Appeals 7 May 2015.

Defendant, relies on State v. Adams, 2 N.C.App. 282, 288, 163 S.E.2d 1, 4 (1968), to argue that even if he testified that it was an accidental shooting, he could rely on more than one defense and the trial court still had to give a self-defense instruction as an "alternative defense" to the charges. However, recently this Court recognized in State v. Gaston, --- N.C.App. ----, ----, 748 S.E.2d 21, 26 (2014) that Adams had "been implicitly overruled by [State v. Williams, 342 N.C. 869, 467 S.E.2d 392 (1996) ] and [State v. Nicholson, 355 N.C. 1, 558 S.E.2d 109 (2002) ] on the issue of whether an instruction on self-defense is proper when the defendant offers no evidence that he intended to kill the decedent upon reasonably believing that he must do so to save himself." Here, any belief that Defendant had was unreasonable and there is no merit to Defendant's argument.