STATE OF NORTH CAROLINA v. WILLIAM DAVID WHETSTONE

No. COA10-1046

(Filed 21 June 2011)

**1. Criminal Law— self-defense—instruction—deadly force or non-deadly force**

There was no plain error in a prosecution for assault with a deadly weapon inflicting serious injury where defendant contended that the trial court should have given the self-defense instruction concerning death or great bodily harm rather than bodily injury or offensive physical contact. Taking the evidence in the light most favorable to defendant, there was sufficient evi-

dence to reach the jury on the question of whether defendant had a reasonable apprehension of death or great bodily harm.

**2. Criminal Law— self-defense—knife as deadly weapon**

The trial court did not err in an assault prosecution in which defendant claimed self-defense by concluding on the evidence that the knife defendant used was a deadly weapon as a matter of law.

Appeal by Defendant from judgment entered 11 March 2010 by Judge J. Gentry Caudill in Catawba County Superior Court. Heard in the Court of Appeals 24 February 2010.

*Roy Cooper, Attorney General, by Ebony J. Pittman, Assistant Attorney General, for the State.*

*Faith S. Bushnaq, for Defendant.*

THIGPEN, Judge.

William David Whetstone ("Defendant") was convicted of assault with a deadly weapon inflicting serious injury. The evidence at trial supported a jury instruction of self-defense. The trial court gave the jury instruction that provided Defendant could use force reasonably appearing necessary to Defendant to protect Defendant from bodily injury or offensive physical contact rather than the instruction that provided Defendant could use force necessary to protect Defendant from death or great bodily harm. We must determine whether the instruction given constituted error. We conclude the trial court gave the incorrect instruction and grant Defendant a new trial.

I: Factual and Procedural Background

The evidence of record in this case tends to show the following: Jeremy Dwayne Dula ("Dula") frequently spent nights at the Defendant's residence. Dula had previously been in the Marine Corps and was trained in hand-to-hand combat. Defendant testified that Dula told him he had assaulted two government officials in the military and that was why he was discharged.

According to Dula, on the evening of 31 July 2008 and the early morning hours of 1 August 2008, he and Defendant went to a bar and both consumed alcoholic beverages. When they returned to Defendant's house, they got into an argument and Defendant assaulted Dula by striking him and stabbing him with a knife.

STATE v. WHETSTONE

[212 N.C. App. 551 (2011)]

Dula was hospitalized at Frye Regional Medical Center for one week for treatment of the wounds he sustained in the altercation. Dula also underwent follow-up treatment, including treatment for his punctured colon and kidney and treatment of a damaged nerve in his arm.

Defendant testified and recounted his version of the events on the evening of 31 July 2008 and the early morning of 1 August 2008. That evening, according to Defendant, he and Dula went to the bar and both consumed alcoholic beverages. When they returned to Defendant's house, Dula called his girlfriend and began arguing with her on the phone. When Defendant told Dula his yelling on the telephone might disturb the neighbors, Dula threw Defendant on the floor and told Defendant that he would kill him. After getting up from the floor, Defendant called Dula's girlfriend and told her she needed to come to Defendant's residence and pick up Dula. When Defendant got off the phone, Dula attacked him from behind, hit him in the back of his head, forced and held him to the ground, and started choking him. Defendant grabbed a knife that had fallen from a table and started swinging back at Dula with the knife. Defendant testified he was afraid of Dula.

On 11 March 2010, the jury found Defendant guilty of assault with a deadly weapon inflicting serious injury. On the same day, Defendant was adjudged to be a prior record level III offender and sentenced, consistent with the jury's verdict, to 33 to 49 months incarceration. From this judgment, Defendant appeals.

## II: Jury Instruction

In Defendant's argument on appeal, Defendant contends that the trial court committed plain error by charging the jury with a "self-defense instruction that related to assaults not involving deadly force" when Defendant "stood accused of assault with a deadly weapon with intent to kill inflicting serious injury." Based on the circumstances of this particular case, we agree that the trial court committed error.

## A: Standard of Review

[1] In Defendant's argument on appeal, Defendant contends that the trial court committed plain error by charging the jury with a "self-defense instruction that related to assaults not involving deadly force" when Defendant "stood accused of assault with a deadly weapon with intent to kill inflicting serious injury." Based on the circumstances of this particular case, we agree.

STATE v. WHETSTONE

[212 N.C. App. 551 (2011)]

Defendant did not properly preserve this issue for appeal[1] but requests that the Court review for plain error. "Plain error analysis applies to evidentiary matters and jury instructions." *State v. Garcell,* 363 N.C. 10, 35, 678 S.E.2d 618, 634 (2009). "A prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all[;] [t]hen, '[b]efore deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict.' " *State v. Torain,* 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert denied,* 479 U.S. 836, 107 S. Ct. 133, 93 L. Ed. 2d 77 (1986) (quoting *State v. Walker,* 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (internal quotation omitted)). Our Courts have further stated, with regard to plain error review, the following:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotations omitted) (Emphasis in original). Defendant bears the burden of showing that an error arose to the level of plain error. *State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

"It is elementary that the trial court, in its instructions to the jury, is required to declare and explain the law arising on the evidence." *State v. Anderson,* 40 N.C. App. 318, 321, 253 S.E.2d 48, 50 (1979) (citing N.C. Gen. Stat. § 15A-1232). Our Supreme Court has held "when there

---

1. At trial, although Defendant engaged in discussions with the court regarding the appropriateness of the self-defense jury instruction given—specifically, whether an intent to kill was implied in "death or great bodily harm"—Defendant did not object to the trial court's instruction using the phrase "bodily injury or offensive physical touching" rather than "death or great bodily harm." Therefore, review for plain error is proper. N.C. R. App. P. 10(a)(4); *State v. Maready,* 362 N.C. 614, 621, 669 S.E.2d 564, 568 (2008) (When a "defendant fail[s] to object to the jury instruction at trial, his challenge is subject to plain error review").

is evidence from which it may be inferred that a defendant acted in self-defense, he is entitled to have this evidence considered by the jury under proper instruction from the court." *State v. Marsh*, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977). " 'Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence.' " *Anderson.*, 40 N.C. App. at 321, 253 S.E.2d at 50 (quoting *State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974)). Thus, "if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory." *State v. Moore*, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010) (citation omitted). "[T]he evidence is to be viewed in the light most favorable to the defendant." *Id.*

## B: Pattern Jury Instruction 308.40

The instruction given by the trial court in this case was Pattern Jury Instruction 308.40[2], which states, in pertinent part, the following:

... Even if you find beyond a reasonable doubt that the defendant assaulted the victim, the assault would be justified by self-defense under the following circumstances:

(1) If the circumstances, at the time the defendant acted, would cause a person of ordinary firmness to reasonably believe that such action was *necessary or apparently necessary to protect that person from bodily injury or offensive physical contact,* and

(2) The circumstances created such belief in the defendant's mind. You determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time.

Additionally, even if the defendant believed there was a right to use force, the amount of force would be limited to reasonable force—not excessive force. The right to use force extends only to such force reasonably appearing to the defendant under the circumstances, *necessary to protect the defendant from bodily injury or offensive physical contact.* In so determining, you

---

2. The title of the Pattern Jury Instruction is "N.C.P.I.—CRIM. 308.40 SELF-DEFENSE—ASSAULTS NOT INVOLVING DEADLY FORCE." The Pattern Jury Instruction contains the following notation: "NOTE WELL: Use only with N.C.P.I.—Crim. 208.40, 208.40A, 208.70, 208.70A, 208.75, and 208.60 when no evidence of deadly force."

should consider the circumstances you find to have existed from the evidence. You should consider (the size, age and strength of the defendant as compared to the victim), (the fierceness of the assault, if any, upon the defendant), (whether the victim possessed a weapon), (the reputation, if any, of the victim for danger and violence) (and) (describe other circumstances supported by the evidence). Again, you determine the reasonableness of the defendant's belief from the circumstances appearing to the defend- ant at the time. (Emphasis added).

### C: Pattern Jury Instruction 308.45

The instruction Defendant contends should have been given is Pattern Jury Instruction 308.45[3], which states, in pertinent part, the following:

If the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was *necessary or appeared to be necessary to protect that person from death or great bodily harm*, and the circumstances did create such belief in the defendant's mind at the time the defendant acted, such assault would be justified by self-defense. You, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time.

A defendant does not have the right to use excessive force. The defendant had the right to use only such force as *reasonably appeared necessary to the defendant under the circumstances to protect the defendant from death or great bodily harm*. In making this determination, you should consider the circumstances as you find them to have existed from the evidence, (including the size, age and strength of the defendant as compared to the victim), (the fierceness of the assault, if any, upon the defendant), (whether or not the victim possessed a weapon), (and the reputation, if any, of the victim for danger and violence) (describe other circumstances as appropriate from the evidence). Again, you, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time. . . .

---

3. The title of this Pattern Jury Instruction is "N.C.P.I.—CRIM. 308.45 SELF-DEFENSE—ALL ASSAULTS INVOLVING DEADLY FORCE." The Pattern Jury Instruction contains the following notation: "NOTE WELL: This charge is intended for use with N.C.P.I.—Crim. 208.09, 208.10, 208.15, 208.16, 208.25, 208.50, 208.55, 208.85, and 208.60 where the evidence shows that defendant used deadly force."

STATE v. WHETSTONE

[212 N.C. App. 551 (2011)]]

*NOTE WELL:* If the defendant used a weapon which is a deadly weapon "per se," do not give the following paragraph, or the paragraph on page 3. If the weapon is not a deadly weapon per se, give the following paragraph and the paragraph on p. 3. *State v. Clay,* 297 N.C. 555, 566 (1979).

(If you find from the evidence beyond a reasonable doubt that the defendant assaulted the victim, *but not with a deadly weapon or other deadly force,* that the circumstances would create a reasonable belief in the mind of a person of ordinary firmness that the action was necessary or appeared to be *necessary to protect that person from bodily injury or offensive physical contact,* and the circumstances did create such belief in the defendant's mind at the time the defendant acted, the assault would be justified by self-defense—even though the defendant was not thereby put in *actual danger of death or great bodily harm;* however, the force used must not have been excessive. Furthermore, self-defense is an excuse only if the defendant was not the aggressor.) (Emphasis added).

## D: Difference Between Pattern Jury Instruction 308.40 and 308.45

The difference in the two charges pertinent to this appeal is the language from Pattern Jury Instruction 308.40, "[i]f the circumstances, at the time the defendant acted, would cause a person of ordinary firmness to reasonably believe that such action was necessary or apparently necessary to protect that person from *bodily injury or offensive physical contact*[,]" and the language from Pattern Jury Instruction 308.45, "[i]f the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or appeared to be necessary to protect that person from *death or great bodily harm.*" (Emphasis added).

## III: Analysis

In certain circumstances, "[t]he theory of self-defense entitles an individual to use such force as is necessary or apparently necessary to save himself from death or great bodily harm. . . . A person may exercise such force if he believes it to be necessary and has reasonable grounds for such belief." *State v. Moore,* 111 N.C. App. 649, 653, 432 S.E.2d 887, 889 (1993) (quotation omitted). However, in other circumstances a person may only use such force as is necessary "to protect himself from bodily harm or offensive physical contact[.]" *State v. Beaver,* 14 N.C. App. 459, 463, 188 S.E.2d 576, 579 (1972) (citations omitted).

Our courts have recognized that a defendant may use either deadly force or nondeadly force to defend himself, depending on the circumstances of each case. *See, generally, State v. Pearson,* 288 N.C. 34, 215 S.E.2d 598 (1975). Deadly force is "force intended or likely to cause death or great bodily harm[,]" and nondeadly force is "force neither intended nor likely to do so[.]" *Id.,* 288 N.C. at 39, 215 S.E.2d at 602. "Because the only justification for the use of *deadly force* is a reasonable belief that one is in danger of death or great bodily harm, 'where the assault being made upon defendant is insufficient to give rise to a reasonable apprehension of death or great bodily harm, then the use of deadly force by defendant to protect himself from bodily injury or offensive physical contact is excessive force *as a matter of law.'* " *Richardson,* 341 N.C. at 590, 461 S.E.2d at 728 (quoting *State v. Clay,* 297 N.C. 555, 563, 256 S.E.2d 176, 182 (1979), *overruled on other grounds, Richardson,* 341 N.C. 585, 589-90, 461 S.E.2d 724, 727-28, *State v. McAvoy,* 331 N.C. 583, 600-01, 417 S.E.2d 489, 500, and *State v. Davis,* 305 N.C. 400, 415, 290 S.E.2d 574, 583 (1982)).

Although the law allows a defendant, in certain circumstances, to use deadly force to defend himself, the determination by the trial court of which jury instruction is appropriate depends on the evidence in each case. *State v. Clay,* 297 N.C. 555, 256 S.E.2d 176, is instructive on this point.

First, the Court in *Clay,* in addressing the self-defense instruction to be given in an assault with a deadly weapon case, stated the following: "In cases involving assault with a deadly weapon, trial judges should, in the charge, instruct that the assault would be excused as being in self-defense only if the circumstances at the time the defendant acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from death or great bodily harm."[4] *Id.,* 297 N.C. at 565-66, 256 S.E.2d at 183.

Second, the Court then addressed the type of instruction that should be given if a deadly weapon *per se* were used: "If the weapon used is a deadly weapon per se, no reference should be made at any

4. However, a prior decision of this Court suggests that the possession of a deadly weapon does not necessarily constitute the use of deadly force, and therefore, in certain circumstances, does not necessitate a deadly force jury instruction. *See State v. Polk,* 29 N.C. App. 360, 361-62, 224 S.E.2d 272, 273 (1976) (When the defendant fired shots from a gun "in order to scare" his attacker, but did not use deadly force, he was entitled to an instruction on the right to defend against bodily injury or offensive physical contact, a nondeadly-force defense).

point in the charge to bodily injury or offensive physical contact." *Id.*, 297 N.C. at 566, 256 S.E.2d at 183 (quotation omitted).

Third, in those cases where a deadly weapon *per se* is not used, the Court stated: "If the weapon used is not a deadly weapon per se, the trial judge should instruct the jury that if they find that defendant assaulted the victim *but do not find that he used a deadly weapon*, that assault would be excused as being in self-defense if the circumstances at the time he acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from bodily injury or offensive physical contact." *Id.*, 297 N.C. at 566, 256 S.E.2d at 183-84 (quotation omitted) (Emphasis in original). "In determining whether the weapon used was a deadly weapon, the jury should consider the nature of the weapon, the manner in which it was used, and the size and strength of the defendant as compared to the victim." *Id.*, 297 N.C. at 566, 256 S.E.2d at 184.

Our Courts have defined a deadly weapon as "an instrument which is likely to produce death or great bodily harm, under the circumstances of its use." *State v. Riddick*, 315 N.C. 749, 759, 340 S.E.2d 55, 61 (1986) (quotation omitted). "The deadly character of the weapon depends sometimes more upon the manner of its use and the condition of the person assaulted than upon the intrinsic character of the weapon itself." *Id.*, 315 N.C. at 760, 340 S.E.2d at 61. "Some weapons are *per se* deadly, e.g., a rifle or pistol: others, owing to the great and furious violence and manner of use, become deadly." *Id.*, 315 N.C. at 759-60, 340 S.E.2d at 61. "The definition of a deadly weapon clearly encompasses a wide variety of knives[.]"[5] *State v. Walker*, —— N.C. App. ——, ——, 694 S.E.2d 484, 493 (2010).

"[Generally,] the law does not justify or excuse the use of a deadly weapon to repel a simple assault." *Pearson*, 288 N.C. at 40, 215 S.E.2d at 603 (1975) (quotation omitted). "This principle does not apply, however, where from the testimony it may be inferred that the use of such weapon was or appeared to be reasonably necessary to save the person assaulted from great bodily harm[.]" *Id.*

Based on the foregoing law, to determine whether an instruction containing the language "to protect himself from bodily harm or

---

5. "[T]he evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death." *Walker*, —— N.C. App. at ——, 694 S.E.2d at 493..

offensive physical contact" or an instruction containing the language, "to save himself from death or great bodily harm," is correct on the facts of this case, we must examine Defendant's evidence surrounding Dula's assault on Defendant.

Here, viewing the evidence in the light most favorable to Defendant and taking Defendant's evidence as true, we believe there is sufficient evidence of record to support the proposition that Dula's assault upon Defendant gave rise to Defendant's reasonable apprehension of death or great bodily harm.[6] Dula had previously been in the Marine Corps and was trained in hand-to-hand combat. According to Defendant, after Defendant told Dula "[y]ou can't be yelling out here. I've got neighbors[,]" Dula "hit [Defendant] in the back of the head," and knocked Defendant to the ground. Dula told Defendant "I'll [expletive deleted] kill you[;] [y]ou don't [expletive deleted] know me[.]" Defendant said he "was scared to death." After knocking Defendant to the ground, Dula "put [Defendant] on [his] back" and into the fighting position called "full guard[,]" which means "you've got both of your legs on top of you and you can't really do anything." Dula started choking Defendant. Only then does Defendant admit that he "started swinging back" with a knife. After the fight, Defendant told his parents that "Dula tried to kill me[,]" and he was afraid to go to his house because, "I was afraid that [Dula] was going to come back."

Dula also gave some testimony that corroborated Defendant's testimony, including Dula's statements that Dula approached Defendant: "[I] walked back over there [toward Defendant] and asked [Defendant] what really is his problem, . . . and that's when we got into it[,]" and that during the fight, "I put [Defendant] on the ground and I held him on the ground[.]"

The trial court gave the Pattern Jury Instruction 308.40 to the jury, which states that Defendant could use force reasonably appearing necessary to Defendant to protect Defendant from bodily injury or offensive physical contact. The trial court also instructed the jury that "[a] deadly weapon is a weapon which is likely to cause death or serious bodily injury[,]" and twice instructed the jury that "[a] knife is a deadly weapon."

---

6. We also note there is sufficient evidence of record contrary to this proposition; however, "if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense it must be given even though the State's evidence is contradictory." *Moore*, 363 N.C. at 796, 688 S.E.2d at 449.

Taking the evidence in a light most favorable to Defendant, we believe the foregoing evidence of Dula's assault upon Defendant was sufficient for the question, whether Defendant had a reasonable apprehension of death or great bodily harm, to be one for the jury. We further believe that, on this evidence, when the trial court instructed the jury that "[a] knife is a deadly weapon[,]" but that "[t]he right to use force extends only to such force reasonably appearing to the defendant under the circumstances necessary to protect the defendant from bodily injury or offensive physical contact[,]" the trial court gave an instruction which (1) was not supported by the evidence[7], (2) was contrary to existing law,[8] and (3) essentially lessened the burden of the State in disproving Defendant's claim of self-defense.[9] The required standard of proof by the State that Defendant's use of deadly force and a deadly weapon was excessive to protect Defendant "from bodily injury or offensive physical contact" was reduced in comparison to proof that Defendant's use of deadly force and a deadly weapon was excessive to protect Defendant from "death or great bodily harm." Because the instruction implied, contrary to

7. *See State v. Spaulding*, 298 N.C. 149, 156, 257 S.E.2d 391, 395 (1979) (holding that, even though the defendant did not see a weapon and the victim did not actually make a show of deadly force, the defendant's apprehension was reasonable).

8. *Clay*, 297 N.C. at 565-66, 256 S.E.2d at 183-184 (holding, "[i]f the weapon used is a deadly weapon per se, no reference should be made at any point in the charge to bodily injury or offensive physical contact") (quotation omitted). Generally, our courts have not distinguished between the terms deadly weapon "per se" and deadly weapon "as a matter of law." *See Torain*, 316 N.C. at 121, 340 S.E.2d at 471 (stating that "[t]he distinction between a weapon which is deadly or dangerous per se and one which may or may not be deadly or dangerous depending upon the circumstances is not one that lends itself to mechanical definition" and "the evidence in each case determines whether a certain kind of [knife] is properly characterized as a lethal device as a matter of law[:]" the "evidence [in this case] amply supports the trial judge's instruction to the effect that a utility knife is a dangerous or deadly weapon per se") (quotation omitted); *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725-26 (1981) (stating that "the evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law" and that "a hunting knife, a kitchen knife and a steak knife have been denominated deadly weapons *per se*"); *State v. Palmer*, 293 N.C. 633, 642, 239 S.E.2d 406, 412 (1977) (stating that "whether simple assault should have been submitted as an alternative verdict depends upon whether the stick was a deadly weapon per se, or as a matter of law"); *see also State v. Parker*, 7 N.C. App. 191, 195, 171 S.E.2d 665, 667 (1970) (holding that the trial court did not err in declaring "as a matter of law that the steak knife was a deadly weapon *per se*").

9. "In prosecutions for felonious assault and for assault with a deadly weapon, it is not incumbent on a defendant to satisfy the jury he acted in self-defense. On the contrary, the burden of proof rests on the State throughout the trial to establish beyond a reasonable doubt that defendant unlawfully assaulted the alleged victim." *State v. Fletcher*, 268 N.C. 140, 142, 150 S.E.2d 54, 56 (1966).

Defendant's evidence, that the assault being made upon Defendant did not put Defendant in fear of death or great bodily harm, the instruction bordered on requiring that the jury conclude that the force Defendant used was excessive force. *Moore*, 111 N.C. App. at 653, 432 S.E.2d at 889 ("If an assault does not threaten death or great bodily harm, the victim of the assault may not use deadly force to protect himself from the assault") (citation omitted). Here, Defendant's evidence taken in the light most favorable to Defendant is sufficient to reach the jury on the question of whether Defendant had a reasonable belief that Dula's assault put Defendant in danger of death or great bodily harm. Therefore, the trial court committed error by instructing the jury that the appropriate inquiry was whether Defendant had a reasonable belief that Dula's assault put Defendant in danger of bodily injury or offensive physical contact. *See Torain*, 316 N.C. at 116, 340 S.E.2d at 468 ("A prerequisite to our engaging in a plain error analysis is the determination that the instruction complained of constitutes error at all") (quotation omitted).

## IV: Extension of Holding in *Clay*

[2] We believe, however, there is one additional issue that must be addressed in this case. In *Clay*, our Supreme Court only addressed those cases in which either a deadly weapon *per se* was used or the matter was submitted to the jury for its determination whether the weapon used was a deadly weapon. *Clay* did not address the scenario, which we have here, where the weapon used is not a deadly weapon *per se*, but the question was not submitted to the jury whether the weapon used was a deadly weapon. *See Walker*, —— N.C. App. at ——, 694 S.E.2d at 493 (stating that "the evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death") (quotation omitted). In the present case, the trial court did not submit the question to the jury whether the knife used by Defendant was a deadly weapon, but concluded instead, on the evidence of the case, that the knife used was a deadly weapon as a matter of law. The court's determination that the knife used was a deadly weapon was appropriate on the facts of this case. *See State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924) (stating, "[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . is one of law, and the Court must take the responsibility of so declaring") (citation omitted).

Withholding this question from the jury and concluding, as a matter of law, that Defendant used a deadly weapon made this case similar to, if not indistinguishable from, those cases in which a deadly weapon *per se* was used.

We hold, therefore, presuming the evidence otherwise supports an instruction on self-defense, that in those cases where the weapon is not a deadly weapon *per se*, but the question of whether the weapon is a deadly weapon is not submitted to the jury because the trial judge concludes on the evidence of the case that the weapon used was a deadly weapon as a matter of law, the jury should be instructed that the assault would be excused as being in self-defense only if the circumstances at the time the defendant acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from death or great bodily harm. We believe this holding is a logical extension of the Supreme Court's holding in *Clay*.

For the foregoing reasons, and on the facts of this case, we conclude that a jury instruction containing the language of Pattern Jury Instruction 308.45, "[i]f the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or appeared to be necessary to protect that person from *death or great bodily harm*[,]" was correct in law and supported by the evidence. We further conclude that, on the facts of this case, the instruction given, Pattern Jury Instruction 308.40, was not supported by the evidence and was contrary to existing law. By giving this instruction, the trial court committed error. Moreover, because the instruction given essentially lessened the State's burden of proving Defendant did not act in self-defense, we conclude the error amounted to plain error; we are "convinced that absent the error the jury probably would have reached a different verdict." *Torain*, 316 N.C. at 116, 340 S.E.2d at 468 (quotation omitted). We grant Defendant a new trial.[10]

NEW TRIAL.

Judges STROUD and HUNTER, JR., concur.

---

10. Because we grant Defendant a new trial on the basis of the jury instruction, we need not reach Defendant's remaining arguments on appeal.