An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1435

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

STATE OF NORTH CAROLINA

    v.

MARTIN DELGADO RAZO

Guilford County
Nos.  13 CRS 71104
       13 CRS 71106

Appeal by defendant from judgment entered 24 July 2013 by Judge Lindsay R. Davis, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Roy Cooper, Attorney General, by Brent D. Kiziah, Assistant Attorney General, for the State.*
>
> *Sharon L. Smith for defendant-appellant.*

DAVIS, Judge.

Martin Delgado Razo ("Defendant") appeals from his convictions of assault on a law enforcement officer inflicting serious injury and simple assault. On appeal, he contends that the trial court (1) erred in denying his motion to dismiss; and (2) abused its discretion by failing to instruct the jury on

self-defense.  After careful review, we find no error in part and vacate and remand for a new trial in part.

## Factual Background

The State's evidence at trial tended to establish the following facts:  On 7 March 2013, Defendant, who was 23 years old, was at his parents' house in Greensboro, North Carolina where he lived with his mother, father, and 13-year-old brother. Defendant made several disparaging comments towards his younger brother which ultimately led to a heated argument between Defendant and his parents.  Defendant's brother placed a 911 call to the Greensboro Police Department reporting the disturbance.

Officer Sean Patterson ("Officer Patterson") with the Greensboro Police Department was the first officer to respond to the call.  Upon arrival at the home, Officer Patterson saw Defendant standing outside the front door.  Officer Patterson, who was uniformed and driving a marked patrol car, identified himself to Defendant as an officer with the Greensboro Police Department and informed Defendant that he was responding to a report of a domestic disturbance.  Defendant invited Officer Patterson inside and began explaining the nature of the argument to him.

While Defendant was speaking with Officer Patterson, Officers Christopher Feliciano ("Officer Feliciano") and M.R.

Leahey ("Officer Leahey") also arrived and entered the residence. The three officers separated the family members, moving Defendant's parents to one side of the room while keeping Defendant at the other side of the room near the front door.

Defendant's parents began discussing with the officers their legal options with regard to Defendant — specifically, whether they could "kick him out, [or] if [the officers] could arrest him[.]" However, when the officers tried to explain their options to them, Defendant loudly interrupted them, yelling out profanities. The officers waited for Defendant to stop yelling and then tried again to speak with his parents. However, Defendant interrupted them a second time, once again screaming profanities. After waiting once more for Defendant to quiet down, the officers attempted for a third time to speak with Defendant's parents, and Defendant again loudly interrupted, using more profanity. During the course of this exchange, another officer, Adam Snyder ("Officer Snyder"), arrived at the residence.

After Defendant's third interruption, Officer Leahey told him that if he interrupted the officers again before they could finish speaking with Defendant's parents, he would be arrested for obstruction of justice. Defendant responded to Officer Leahey by yelling "f--- you. Take me to jail." Officer Leahey then moved to grab Defendant's wrist so as to restrain him and

place him in handcuffs. When Officer Leahey seized Defendant's wrist, Defendant threw a closed-fist punch at him with his free hand, striking Officer Leahey in the mouth.

Officer Patterson, upon seeing Defendant punch Officer Leahey, grabbed Defendant from behind in a bear hug in order to restrain him, and Officer Leahey proceeded to take hold of Defendant in a similar manner from the front. Officer Leahey's foot then came in contact with the leg of a couch, causing him to fall backwards onto the couch and Defendant to fall on top of him. Defendant began grabbing at Officer Leahey's belt, and Officers Patterson and Feliciano — believing Defendant to be reaching for Officer Leahey's weapon — took hold of Defendant's hands and placed him in handcuffs. Throughout the struggle, Defendant was yelling and using profanity.

After Defendant had been handcuffed, Officers Feliciano and Snyder began escorting him out of the house toward Officer Patterson's patrol car with each officer holding one of his arms. Officers Patterson and Leahey were following approximately 10 to 15 feet behind them.

As they approached Officer Patterson's patrol car, Defendant jumped up in the air and kicked Officer Feliciano in his left leg. He then jumped again and kicked Officer Snyder, making contact with Officer Snyder's right shin. At that point, Officer Leahey moved forward and delivered a front-thrust kick

to Defendant's back, causing Defendant to fall to the ground. The officers then placed a restraint device around Defendant's feet while Defendant continued to curse and yell at the officers. Once Defendant was restrained, the officers placed him in the back of Officer Patterson's patrol car. As a result of the altercation, Officer Leahey suffered a one-and-a-half inch gash on his lip and was transported to the emergency room for treatment.

On 20 May 2013, Defendant was indicted for assault on a law enforcement officer inflicting serious injury based on his punching of Officer Leahey. Defendant was also charged with one count of misdemeanor assault on an officer with regard to his kicking of Officer Snyder and one count of misdemeanor assault on an officer with regard to his kicking of Officer Feliciano. Defendant moved to join these offenses for trial, and the trial court granted Defendant's motion. A jury trial was held in Guilford County Superior Court on 23 July 2013.

Defendant testified in his own defense at trial, giving the following account of the events taking place on 7 March 2013 upon the officers' arrival at his parents' home: After stating his explanation for the family argument to the officers, Defendant interrupted the officers while they were speaking with his parents because his mother had a "speech impairment, so she couldn't exactly, um, explain everything correctly as to the way

it happened." Upon the officers asking his father if he wanted Defendant arrested, Defendant interrupted to say that the officers could not arrest him as he had "not broken any laws."

Officer Leahey told Defendant "in a very loud voice, I am the law — um — I am allowed to locate you or relocate you from location to location as needed." Officer Leahey then violently shoved him and grabbed his wrist. Defendant stated that Officer Leahey's actions "kind of scared me and put me in a fright, and it caused for me to react in a way of self-defense, which then I struck the officer to the upper lip."

After he had been handcuffed and was being escorted to Officer Patterson's patrol car, he turned around to look back at Officer Leahey who was behind him. Officer Leahey called Defendant a "F---ing mutt" at which point Officer Snyder gave Defendant's arm "a large tug or pull" as if he was "trying to dislocate [Defendant's] arm." As an act of self-defense, he kicked Officer Snyder in the back of the leg.

The jury found Defendant guilty of (1) assault on a law enforcement officer inflicting serious injury as to Officer Leahey in case number 13 CRS 71106; and (2) simple assault on Officer Snyder — as a lesser included offense of the charge of assault on an officer — in case number 13 CRS 71104. Defendant was found not guilty of assault on an officer and not guilty of the lesser included offense of simple assault as to Officer

Feliciano. The trial court sentenced Defendant to a consolidated term of 6-17 months imprisonment, suspended the sentence, and placed Defendant on supervised probation for 36 months. As a term of special probation, Defendant was ordered to attend an anger management program. Defendant filed a timely notice of appeal.

## Analysis

### I. Denial of Motion to Dismiss

Defendant first argues that the trial court erred in denying his motion to dismiss all charges against him based on the insufficiency of the evidence. Specifically, Defendant claims that he had a right to resist the officers' attempts to take him into custody because they lacked probable cause to arrest him pursuant to N.C. Gen. Stat. § 14-223 in that he did not willfully resist, delay, or obstruct a public officer in discharging or attempting to discharge a duty of his office.

A trial court's denial of a defendant's motion to dismiss is reviewed *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (internal citation omitted), *cert. denied*, 531 U.S. 890, 148

L.Ed.2d 150 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L.Ed.2d 818 (1995).

N.C. Gen. Stat. § 14-223 provides that "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2013). The elements of this offense are as follows:

> 1) that the victim was a public officer;
>
> 2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
>
> 3) that the victim was discharging or attempting to discharge a duty of his office;
>
> 4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
>
> 5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Cornell*, __ N.C. App. __, __, 729 S.E.2d 703, 705 (2012) (internal citation omitted).

Here, Defendant does not offer any argument as to the first three elements of the offense. Our inquiry is therefore limited to the fourth and fifth elements — that is, whether Defendant resisted, delayed, or obstructed the officers in discharging or attempting to discharge a duty of their office, and if so, whether Defendant acted willfully and unlawfully.

> [T]he fourth element establishes the right to be free from arrest for violating N.C. Gen. Stat. § 14-223 when merely remonstrating with an officer or criticizing or questioning an officer while he is performing his duty when done in an orderly manner. The touchstone of the inquiry is orderliness, even where no actual violence or force was used by defendant.

*Id.* at __, 729 S.E.2d at 705-06 (internal citations, quotation marks, brackets, and ellipses omitted).

What constitutes an "orderly manner" of remonstration in the context of this offense is illustrated by several of our prior cases. In *Cornell*, an officer at a bluegrass festival noticed that two rival gangs appeared to be squaring off and about to fight. *Id.* at __, 729 S.E.2d at 704-05. The officer attempted to instruct one of the gangs to disperse and move away from the other gang. *Id.* The defendant, a member of one of the gangs, stepped in between his gang and the officer and told the

officer to speak to him instead, refusing to get out of the officer's way for 10 to 15 seconds despite the officer's repeated orders for him to step aside. *Id.* This Court held that the defendant's actions went beyond merely arguing with the officer and amounted to the obstruction of a public officer in the course of discharging or attempting to discharge a duty of his office. *Id.* at __, 729 S.E.2d at 706.

In *State v. Leigh*, 10 N.C. App. 202, 178 S.E.2d 85 (1970), *rev'd on other grounds*, 278 N.C. 243, 179 S.E.2d 708 (1971), while a deputy sheriff was attempting to question a suspect in an ongoing investigation, the defendant repeatedly yelled to the suspect: "You don't have to go with that Gestapo Pig." *Id.* at 204-05, 178 S.E.2d at 86-87. We held that the defendant

> did not have the right, by the continued use of loud and abusive language, to prevent the officer from talking to [the suspect]. . . . The deputy sheriff was unable to talk to [the suspect] because of the loud and abusive language of the defendant over a period of several minutes. He had to drive away from the scene in order to talk to [the suspect], and this constituted a delay in the performance of his duty as an officer.

*Id.* at 205, 178 S.E.2d at 807; *see also State v. Burton*, 108 N.C. App. 219, 226, 423 S.E.2d 484, 488 (1992) (holding that willful obstruction was established where defendant's yelling at officer who had pulled over defendant's vehicle prevented that officer from calling in to check on vehicle's registration),

*appeal dismissed and disc. review denied*, 333 N.C. 576, 429 S.E.2d 574 (1993).

In the present case, the State presented evidence tending to show that while officers were attempting to talk with Defendant's parents in furtherance of their investigation into a reported family disturbance, Defendant interrupted the officers three separate times by yelling loudly and profanely over his parents' answers to the officers' questions. The officers were forced to wait for him to finish yelling each time so that they could attempt to obtain the parents' information. This led to Officer Leahey warning Defendant that if he did not remain quiet and allow the officers to speak to his parents, he would be arrested for obstruction. Defendant responded to this warning by yelling: "[F]--- you. Take me to jail." We conclude that the evidence was sufficient to satisfy the fourth element of N.C. Gen. Stat. § 14-223.

With regard to the willfulness element, we believe that issue was likewise a question of fact for the jury to decide given that "willfulness [is] a state of mind which is seldom capable of direct proof, but which must be inferred from the circumstances of the particular case." *Cornell*, __ N.C. App. at __, 729 S.E.2d at 706 (internal citation and quotation marks omitted).

While Defendant relies heavily on *State v. Allen*, 14 N.C. App. 485, 188 S.E.2d 568 (1972), his reliance is misplaced. In *Allen*, the driver of a car in which the defendant was a passenger was arrested for driving under the influence of an intoxicating liquor. The arresting officer seized a sealed, unopened bottle of whiskey from the back seat of the car as evidence and took it back to his patrol car. The defendant followed the officer back to the officer's car and argued that the whiskey was his property, not the driver's, and that the officer had no right to confiscate it. The officer told the defendant that if he did not stop arguing he would be arrested. The defendant did not stop arguing and was ultimately arrested. *Id.* at 487, 188 S.E.2d at 570. This Court held that

> mere remonstrances or even criticisms of an officer are not usually held to be the equivalent of unlawful interference. . . .
>
> [The defendant] was merely arguing with the officer and protesting the confiscation of his liquor. He had committed no offense and the officer had no authority to arrest him.

*Id.* at 492, 188 S.E.2d at 573 (internal citation and quotation marks omitted).

*Allen* is distinguishable from the present case. The defendant in *Allen* was calm and deliberate in his argument with the arresting officer. He "followed the officer back to the patrol car insisting that the officer return the liquor. He

made no attempt to interfere with the officer and did not threaten to do so. There was no threat of physical violence. [The defendant] offered no resistance to the officer until he was placed under arrest." *Id.* at 491, 188 S.E.2d at 573.

Conversely, the repeated interruptions and profane yelling by Defendant directly interfered with the officers' attempts to discharge their duties. Therefore, because Defendant's argument regarding the trial court's denial of his motion to dismiss hinges on his mistaken contention that the officers lacked a legal basis for placing him under arrest, we hold that the trial court did not err in denying his motion.

## II. Self-Defense Instruction

Defendant's final argument on appeal is that the trial court erred in failing to expressly instruct the jury on self-defense as to the assault on a law enforcement officer inflicting serious injury charge regarding Defendant's punching of Officer Leahey. We agree.

It is well established that "[i]n certain circumstances, the theory of self-defense entitles an individual to use such force as is necessary or apparently necessary to save himself from death or great bodily harm. A person may exercise such force if he believes it to be necessary and has reasonable grounds for such belief." *State v. Whetstone*, 212 N.C. App.

551, 557, 711 S.E.2d 778, 783 (2011) (internal citation, quotation marks, brackets, and ellipses omitted).

> [W]hen there is sufficient evidence to present the question of self-defense the trial court must instruct the jury on that defense even in the absence of a request to do so.
>
> Similarly, there is no question that where there is evidence tending to show the use of excessive force by [a] law [enforcement] officer, the trial court should instruct the jury that the assault by the defendant upon the law officer was justified or excused if the assault was limited to the use of reasonable force by the defendant in defending himself from that excessive force.

*State v. Robinson*, 40 N.C. App. 514, 519, 253 S.E.2d 311, 314, (1979) (internal citations, quotation marks, and ellipses omitted).  Furthermore, we have held that

> [w]here there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence. Thus, if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory.  The evidence is to be viewed in the light most favorable to the defendant.

*Whetstone*, 212 N.C. App. at 555, 711 S.E.2d at 781-82 (internal citations, quotation marks, and brackets omitted).

During the charge conference, the trial court stated that while it believed an instruction on self-defense was warranted

as to the charges relating to Defendant's assaults on Officers Feliciano and Snyder, it did not believe such an instruction was warranted as to the charge stemming from Defendant's assault on Officer Leahey.

> This Court reviews jury instructions contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury. If a party requests a jury instruction which is a correct statement of the law and which is supported by the evidence, the trial judge must give the instruction at least in substance.

*Cornell*, __ N.C. App. at __, 729 S.E.2d at 708 (internal citation, brackets, and ellipses omitted).

The trial court instructed the jury on the law of self-defense jointly as to the assault charges regarding Officers Snyder and Feliciano but did not extend this instruction to apply to the charge relating to the assault on Officer Leahey.

> In Case Nos. 13CRS71103 and 13CRS71104 the defendant is charged with assault on a government officer, Greensboro Police Officers Christopher Feliciano and A.L. Snyder, respectively, while each officer was performing or attempting to perform a duty of his office.
>
> In each case your duty is to return one of the following verdict [sic]: Guilty of

assault on a government officer while the officer was discharging or attempting to discharge a duty of his office; guilty of simple assault; or not guilty.

. . . .

In addition, if the state has satisfied you beyond a reasonable doubt that the defendant assaulted the alleged victim, then you would consider whether the defendant's actions are excused and the defendant is not guilty because the defendant acted in self-defense.

The state has the burden of proving from the evidence, beyond a reasonable doubt, that the defendant's action was not in self-defense. Even if you find, beyond a reasonable doubt, that the defendant assaulted the alleged victim, the assault would be justified by self-defense under the following circumstances:

1. If the circumstances at the time the defendant acted would cause a person of ordinary firmness to — reasonably to believe that such action was necessary or apparently necessary to protect that person from bodily injury or offensive physical contact.

2. The circumstances created such belief in the defendant's mind.

You determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time.

If you find that the defendant intentionally kicked an officer escorting him after the arrest and the arrest was unlawful, or if you do not find that the defendant's assault was justified by self-defense, then you will not find the defendant guilty[.]

The trial court reiterated the self-defense doctrine separately as to the charge relating to Defendant's kicking of Officer Feliciano:

> In addition, if the state has satisfied you, beyond a reasonable doubt, that the defendant assaulted the alleged victim, then you would consider whether the defendant's action — actions are excused and the defendant is not guilty because the defendant acted in self-defense.
>
> The state has the burden of proving from the evidence, beyond a reasonable doubt, that the defendant's action was not in self-defense.
>
> The instructions previously given regarding self-defense apply as well here.
>
> If you do not so find at least one of these elements of justification or excuse, or that the defendant's assault was not justified by self-defense, or if you have a reasonable doubt as to any of these things, then it would be your duty to return a verdict of not guilty[.]

The trial court then gave an essentially identical additional instruction on self-defense as to the charge concerning Defendant's kicking of Officer Snyder. With regard to the charge relating to Officer Leahey, however, the trial court's instructions merely stated, in pertinent part, as follows:

> If Officer Leahey was making or attempting to make a lawful arrest, then the defendant had the duty to submit to that arrest. If the defendant struck Officer Leahey in the face with his fist while Officer Leahey was

> making or attempting to make such arrest, then the defendant's striking of Officer Leahey would not be justified or excused.
>
> *If the arrest was not a lawful arrest*, then the defendant had a right to resist the unlawful arrest. In doing so, he was justified in using such force as reasonably appeared to him to be necessary, under the circumstances, to prevent the unlawful restraint of his liberty. The resisting force by the defendant cannot have been excessive.

(Emphasis added.)

Thus, Defendant failed to receive an overt self-defense instruction as to the charge relating to his assault on Officer Leahey despite receiving such an instruction as to the charges relating to Officers Feliciano and Snyder. Moreover, the trial court's instructions regarding the charge relating to Officer Leahey suggested that Defendant was not entitled to defend himself against any excessive force used by Officer Leahey if Officer Leahey's arrest of Defendant was lawful. In our view, the refusal to give such a self-defense instruction was erroneous given Defendant's testimony that he punched Officer Leahey in the face because Officer Leahey had shoved him violently moments before and that, as a result, Defendant was in fear for his safety.

> The right to defend oneself from the excessive use of force by a police officer must be carefully distinguished from the well-guarded right to resist an arrest which is unlawful. One resisting an illegal arrest is not resisting an officer within

> the discharge of his official duties. However, the right to use force to defend oneself against the excessive use of force during an arrest may arise despite the lawfulness of the arrest, and the use of excessive force does not render the arrest illegal.

*State v. Anderson*, 40 N.C. App. 318, 322, 253 S.E.2d 48, 51 (1979) (internal citations omitted).

We further believe that Defendant was prejudiced by the trial court's failure to give a self-defense instruction as to the charge relating to Officer Leahey. Because a clear self-defense instruction was given as to the charges relating to Defendant's assaults on Officers Feliciano and Snyder, a reasonable juror would have been left with the impression that Defendant's right of self-defense was significantly greater as to the charges relating to these officers than as to the charge involving Officer Leahey. Moreover, the jury was likely also left with the erroneous impression that Defendant did not have any right of self-defense at all as to Officer Leahey if it found that Officer Leahey's arrest of Defendant was lawful. Accordingly, we conclude that Defendant is entitled to a new trial on the charge of assault on a law enforcement officer inflicting serious injury (13 CRS 71106).[1]

## Conclusion

---

[1] Because Defendant's conviction on this offense was consolidated for judgment with his conviction on the charge of simple assault on Officer Snyder (13 CRS 71104), we remand for resentencing.

For the reasons stated above, we vacate Defendant's conviction on the charge of assault on a law enforcement officer inflicting serious injury (13 CRS 71106) and remand for a new trial solely as to that charge. As to Defendant's conviction for simple assault (13 CRS 71104), we find no error.

NO ERROR IN PART; NEW TRIAL IN PART; AND REMANDED FOR RESENTENCING.

Judges ELMORE and McCULLOUGH concur.

Report per Rule 30(e).