STROUD, Judge, dissenting.
Because I believe that the majority failed to rely on the dispositive law in this case, North Carolina General Statute § 14-51.2, I dissent.
While the State may characterize defendant's testimony in a slightly different way, when considering whether to provide the self-defense instruction to the jury the trial court was required to view defendant's evidence as true. See State v. Whetstone , 212 N.C. App. 551, 554-55, 711 S.E.2d 778, 781-82 (2011) ("Our Supreme Court has held when there is evidence from which it may be inferred that a defendant acted in self-defense, he is entitled to have this evidence considered by the jury under proper instruction from the court. Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence. Thus, if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory. The evidence is to be viewed in the light most favorable to the defendant." (citations, quotation marks, and brackets omitted)). Defendant testified that in the evening prior to the incident from which this case arose, he and his girlfriend were watching movies in his upstairs locked back bedroom and smoked marijuana; he felt tired because it had been "a long day[,]" and he had shoveled snow out of his driveway. In the morning, he was awakened by his girlfriend to hear his mother and brother "wailing" and to see a foot coming through his door. Defendant did not hear anyone "announce 'police' " or request for him to open the door. Defendant picked up his gun, shot it, jumped out the window, and ran to his neighbor's house "screaming for help" and telling his neighbor to "call the police" because "someone [was] trying to kill [him] and [his] family."
Defendant's only issue on appeal is whether the trial court erred in failing to instruct the jury on self-defense upon his request. The *157 applicable statute to this case is North Carolina General Statute § 14-51.2, which codified the "castle doctrine[,]" a name which stems from the colloquialism "that one's home is one's castle." State v. Stevenson , 81 N.C. App. 409, 412, 344 S.E.2d 334, 335 (1986) ("The 'castle doctrine' is derived from the principle that one's home is one's castle and is based on the theory that if a person is bound to become a fugitive from her own home, there would be no refuge for her anywhere in the world.") While the castle doctrine is a legal theory in the nature of self-defense, it is a separate and distinct analysis from simple self-defense against a threat of serious or deadly force because under the castle doctrine the person is not just defending himself but also defending himself in the place he has the right to be and feel safe; the castle doctrine is thus the synthesis of self-defense and the defense of habitation. See generally Catherine L. Carpenter, Of the Enemy Within, the Castle Doctrine, and Self-Defense, 86 Marq. L. Rev. 653, 665-69 (2003) ("[T]he Castle Doctrine sits at the intersection of two distinct but interrelated defenses: defense of habitation and self-defense. Defense of habitation is primarily based on the protection of one's dwelling or abode, and stems from the common law belief that a man's home is his castle. Essentially, the defense provides that the use of deadly force may be justified to prevent the commission of a felony in one's dwelling.... Whereas in defense of habitation, *580 deadly force may be used to prevent the commission of an atrocious felony, in self-defense, deadly force may be used when necessary in resisting or preventing an offense which reasonably exposes the person to death or serious bodily harm. The contemplated need for self-defense in the home, therefore, is in some sense broader-it can be an external or internal attack-but it is narrower in its requirement that the attacker intends death or serious bodily harm." (footnotes omitted)).
Turning to our own statutory version of the castle doctrine, North Carolina General Statute § 14-51.2(b) provides that
[t]he lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
(1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting *158 to remove another against that person's will from the home, motor vehicle, or workplace.
(2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
N.C. Gen. Stat. § 14-51.2 (2013) (emphasis added). Thus, North Carolina General Statute § 14-51.2 gives the defendant the benefit of a presumption that he "held a reasonable fear of imminent death or serious bodily harm to himself or herself or another" in this situation. Id. The State then has the burden of rebutting this presumption by showing that the entry was not unlawful since police officers were "forcefully entering" to execute a search warrant after properly identifying themselves:
The presumption set forth in subsection (b) of this section shall be rebuttable and does not apply in any of the following circumstances:
....
(4) The person against whom the defensive force is used is a law enforcement officer or bail bondsman who enters or attempts to enter a home, motor vehicle, or workplace in the lawful performance of his or her official duties, and the officer or bail bondsman identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person entering or attempting to enter was a law enforcement officer or bail bondsman in the lawful performance of his or her official duties.
Id . (emphasis added).
Here, the State presented evidence upon which the jury, if properly instructed, could have determined that the presumption of defendant's reasonable fear had been rebutted. Officer Mark Hanson testified that he identified himself as a police officer before he kicked in defendant's bedroom door; defendant testified he did not hear him do so. Thus, there was a factual question as to whether Officer Hanson did in fact identify himself "in accordance with any applicable law" or defendant otherwise "knew or reasonably should have known that the person entering" was a law enforcement officer. In actuality, all of the aforementioned testimony could be true: Officer Hanson properly identified himself and defendant did not hear him; defendant was asleep, and had to be *159 awakened by his girlfriend and when he awoke his family was "wailing" which may have drowned out the announcement. Defendant testified he was in only a tank top and underwear when he jumped out of the window into the snow and fearfully ran from his home for help to have his neighbor call the police. Testimony from law enforcement officers confirms they found defendant barefoot and in his underwear next to an individual who was on his phone. Defendant was not fleeing or trying to escape the police officers but was merely "standing next" to the person on the phone. Thus, it is entirely possible the jury, if properly instructed, would have believed the testimony of these officers and *581 defendant. Had the jury been properly instructed according to North Carolina General Statute § 14-51.2, they could have decided whether the State had overcome the rebuttable presumption established by the statute. See id. ; see also Whetstone , 212 N.C. App. at 554-55, 711 S.E.2d at 781-82 ("Our Supreme Court has held when there is evidence from which it may be inferred that a defendant acted in self-defense, he is entitled to have this evidence considered by the jury under proper instruction from the court. Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence. Thus, if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory. The evidence is to be viewed in the light most favorable to the defendant." (citations, quotation marks, and brackets omitted)).
North Carolina General Statute § 14-51.2 as written indicates only that officers need to identify themselves in accordance with the law and if they do so, the State need not prove that the defendant actually heard them, but I doubt the General Assembly intended such a strict application, since even a quiet announcement at the door of a home could perhaps qualify as an announcement.[1] See generally N.C. Gen. Stat. § 14-51.2. Nonetheless, I need not resolve the broader statutory question not before this Court or the factual issues in this case because that should have been the jury's job. See Whetstone , 212 N.C. App. at 554-55, 711 S.E.2d at 781-82. The question before us is simply whether defendant's requested instruction should have been provided; as there *160 was evidence from which a jury could determine that the officers had not announced their presence properly, the officer exception to North Carolina General Statute § 14-51.2 would not apply and the castle doctrine would. See N.C. Gen. Stat. § 14-51.2.
The majority's analysis relies upon law which developed in substantially different factual situations than this case, particularly law focusing on self-defense in public places or at a party. Contrast State v. Williams ; 342 N.C. 869, 467 S.E.2d 392 (1996) ; State v. Reid , 335 N.C. 647, 440 S.E.2d 776 (1994) ; State v. Pearson , 288 N.C. 34, 215 S.E.2d 598 (1975) ; State v. Hinnant , 238 N.C. App. 493, 768 S.E.2d 317 (2014). State v. Lyons is the only case the majority analysis notes that involves the defendant being in his own home, see State v. Lyons , 340 N.C. 646, 459 S.E.2d 770 (1995), but it is an opinion written more than 15 years before the codification of the castle doctrine. See N.C. Gen. Stat. § 14-51.2. If the castle doctrine and the law of self-defense are not both reconciled and clearly distinguished we end up with this nonsensical result-a person asleep in his own home is awakened by an intruder attempting to enter his bedroom; the resident fires a "warning shot" to frighten the intruder away, and escapes from his home through the window, as he does not wish to encounter the intruder-that person may be convicted of a crime for firing the gun simply because he did not say that he intended to kill the intruder when he fired the gun. The law should not encourage people to shoot to kill any other person-even someone invading a home at night-if a warning shot will suffice.
Because there was evidence upon which to instruct the jury as to self-defense in the home based upon the castle doctrine codified in North Carolina General Statute § 14-51.2, the trial court erred in not providing such an instruction upon defendant's request. I therefore respectfully dissent and would grant defendant a new trial.

Although not an issue in this case, where a law enforcement officer simply calls out "police" or a similar announcement, North Carolina General Statute § 14-51.2 raises some obvious concerns in situations where the residents of a home are deaf or hard of hearing. For law enforcement officers, there is the danger of being shot by a deaf resident even though they properly announced their identification. For the residents, there is the danger of being convicted of a serious felony for reasonably defending themselves and their homes.